426 A.2d 614

COMMONWEALTH of Pennsylvania, Appellee,

v.

Alice GREEN, Appellant.

Supreme Court of Pennsylvania.

Submitted Oct. 15, 1980.

Decided March 13, 1981.

410

Ronald Schulman, for appellant.

Robert B. Lawler, Chief, Appeals Div., Ann Lebowitz, Philadelphia, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION

KAUFFMAN, Justice.

Appellant, Alice Green, was convicted of first degree murder after a non-jury trial in the Court of Common Pleas of Philadelphia. Post verdict motions were filed and denied, and appellant was sentenced to a term of life imprisonment. This direct appeal followed, and we now affirm the judgment of sentence.[1]

Viewing the evidence in the light most favorable to the Commonwealth, as we must, *Commonwealth v. Robinson*, 468 Pa. 575, 364 A.2d 665 (1976); *Commonwealth v. Agie*, 449 Pa. 187, 296 A.2d 741 (1972), the facts are as follows: At approximately 5:00 p. m. on August 3, 1977, Officer Bruce Kopena proceeded to a residence at 642 N. Yewdall Street in Philadelphia in response to a police radio call. Upon his arrival, he found Horace Alexander ("the victim") lying on the living room floor in a blood soaked shirt. Officer Kopena returned momentarily to his patrol car to call for assistance. When he re-entered the house, appellant appeared from the kitchen holding a shopping bag in which she had packed a change of clothes. She saw the officer and stated spontaneously: "I'm ready to go to jail now. I hope he dies and I'm glad I stabbed him." (N.T. 40, Vol. I). Appellant was immediately placed under arrest, and while she was being escorted to the patrol car, she yelled that she "did it" and that she wanted the whole block to know. (N.T. 53, Vol. I). Inside the patrol car, she told another officer: "I'm glad I killed [him]. Is he dead? Is he dead? I'll teach him to mess with that bitch." (N.T. 49, Vol. I).

The victim was taken to Miseracordia Hospital where he died at 6:10 p. m. that evening as a result of multiple stab wounds of the head, neck and trunk. (N.T. 63, Vol. I).[2] Appellant also was hospitalized for treatment of wounds she

1. Jurisdiction is vested in this Court pursuant to the Judicial Code, Act of July 9, 1976, P.L. 586, No. 142, 42 Pa.C.S.A. § 722(1).

2. The victim had regained partial consciousness upon arrival of the rescue squad, and, while in extremis, told Officer Kopena that appellant had stabbed him. (N.T. 40, Vol. I).

sustained when the handle of the murder weapon broke during the stabbing. While at the hospital, at approximately 6:30 p. m., appellant was approached by Detective Daniel Lynch, who informed her that the victim had died and that she was under arrest for murder. Appellant responded: "Well, if he's not [dead], tell me what room he's in and I'll finish the job." (N.T. 68–69, Vol. I). After Detective Lynch communicated the appropriate *Miranda* warnings to appellant, she confessed to stabbing the victim to death because she believed he was seeing another woman.

Appellant and the victim had been residing together at the Yewdall Street address for some time. She suspected that he had been "cheating" on her for almost a year, and testified that on the morning of the murder, she saw him "hugging" another woman. Although appellant saw the victim with the other woman that morning, she did not confront him then, but continued about her routine business for the remainder of the day. Detective Lynch testified, however, that appellant told him she emptied the contents of thirty Darvon capsules into the victim's food while preparing dinner because she wanted him to be asleep when she killed him. (N.T. 69, Vol. I).[3]

During dinner, an argument erupted, and appellant confronted the victim with her suspicion that he was seeing another woman. When he denied her accusation, appellant flew into a rage, grabbed his toupee and stabbed him repeatedly with a paring knife. Appellant claims that she has no memory of the stabbing, but concedes that she must have done it because her hand was cut and because there was no one other than her 14–year old daughter and 3–year old grandson in the house at the time.

Several questions are presented for review: (1) whether there was sufficient evidence that appellant was sane beyond a reasonable doubt at the time of the killing; (2) whether there was sufficient evidence of "specific intent" to sustain the first degree murder conviction; (3) whether the suppression court erred in denying appellant's motion to

3. The police crime lab found no trace of Darvon in the food.

suppress her confession; and (4) whether appellant should have been convicted only of voluntary manslaughter.

## I

Appellant entered a plea of not guilty by reason of insanity. She here maintains that the Commonwealth failed to prove her sanity beyond a reasonable doubt at the time of the stabbing and that the trial judge therefore erroneously rejected her insanity defense. Appellant had offered the testimony of Dr. Park Eliot Dietz, a psychiatrist, who conducted a single one to two hour interview with her seven weeks after the incident. Dr. Dietz' testimony revealed, *inter alia*, that appellant had a history of mental illness and that she was of limited intelligence. He concluded that appellant

> "was psychotic immediately preceding and immediately after the stabbing of Horace Alexander and during the time of that stabbing that she was in such a rage as a consequence of this psychosis that she was unaware of her actions and in addition to not knowing their nature and quality had no understanding and no knowledge that they were wrong."

(N.T. 29, Vol. II). The Commonwealth offered no expert testimony on the question of appellant's sanity, but relied on the testimony of the police officers who had observed her shortly after the stabbing.

Once a criminal defendant offers evidence of insanity, the burden is on the Commonwealth to prove sanity beyond a reasonable doubt. *Commonwealth v. Tyson*, 485 Pa. 344, 402 A.2d 995 (1979); *Commonwealth v. Vogel*, 468 Pa. 438, 364 A.2d 274 (1976); *Commonwealth v. Bruno*, 466 Pa. 245, 352 A.2d 40 (1976). To sustain its burden, the Commonwealth need not produce expert evidence, but may rely instead on lay testimony concerning the defendant's actions and statements at or about the time of the act. *Commonwealth v. Tyson*, 485 Pa. 344, 402 A.2d 995 (1979); *Commonwealth v. Demmitt*, 456 Pa. 475, 321 A.2d 627 (1974). The credibility and weight to be accorded all of the evidence

is solely within the province of the fact finder.[4]  *Commonwealth v. Tyson, supra.*

■ We conclude that the evidence, viewed in the light most favorable to the verdict winner, was more than adequate to support the trial judge's finding that appellant was sane beyond a reasonable doubt at the time of the stabbing. Here, the police officers' account of appellant's statements and actions immediately after the incident clearly establish that she knew she had stabbed the victim and that it was wrongful to do so.  Indeed, she had packed her clothes and was prepared to go to jail for what she had done.  (N.T. 73, Vol. I).  Moreover, appellant testified that she knew and always has known that killing is both morally and legally wrong.  (N.T. 99, Vol. I).

## II

Appellant next contends that the evidence was insufficient to support a verdict of first degree murder.  In particular, she maintains that she did not possess the requisite specific intent to kill.

■ In order to sustain a conviction of first degree murder, the Commonwealth must prove, beyond a reasonable doubt, that the killing was "willful, deliberate, and premeditated."  *Commonwealth v. Robinson,* 468 Pa. 575, 364 A.2d 665 (1976); *Commonwealth v. O'Searo,* 466 Pa. 224, 352 A.2d 30 (1976); 18 Pa.C.S.A. § 2502.  Since one's state of mind is subjective, the specific intent to kill may be inferred from the perpetrator's conduct, including the intentional use of a deadly weapon on a vital part of the body of another

4. The test for legal insanity in this Commonwealth, known as the M'Naghton rule, "is not intended to separate the emotionally disturbed defendants from the emotionally healthy.  Rather, it is intended to include defendants, both disturbed and healthy, among those who are held criminally responsible."  *Commonwealth v. Demmitt,* 456 Pa. at 481, 321 A.2d at 631.  Under the M'Naghton rule, a defendant is legally insane, and thus not criminally responsible, only if "at the time of the act, either he did not know the nature and quality of the act or he did not know that it was wrong."  *Id.; Commonwealth v. Bruno, supra.*

human being.[5]  *Commonwealth v. O'Searo, supra; Commonwealth v. Agie*, 449 Pa. 187, 296 A.2d 741 (1972).

Here, appellant used a paring knife to stab the victim ten times in the head, neck, and trunk.  Even when the handle on the knife broke, she seized the naked blade in her hand and continued stabbing him.  As evidenced by her statements to the police officers shortly after the incident, appellant clearly intended to kill the victim because she believed he had been unfaithful.[6]

Appellant points to her trial testimony that she did not intend to kill the victim (N.T. 85, Vol. I) and argues that certain circumstances surrounding the crime preclude a finding of premeditation: (1) she committed the act with her 3-year old grandson in the house; (2) she was not prepared with a weapon and in fact used a knife which the victim handed her during the meal; (3) she attacked the victim, who was much larger and stronger than she, from the front; and (4) she did not act in furtherance of a preconceived "plan", but rather on the spur of the moment.

The finder of fact may believe all, part, or none of a witness' testimony.  *Commonwealth v. Long*, 467 Pa. 98, 354 A.2d 569 (1976).  Here, the trial court expressly disbelieved appellant's testimony concerning her intent.  (Trial Court op. at 3).  Moreover, our cases have held that the period of premeditation necessary to form the requisite specific intent may be very brief, *Commonwealth v. Robinson*, 468 Pa. at 583, 364 A.2d at 669.  Indeed, "design to kill can be formulated in a fraction of a second," and premeditation and deliberation exist "whenever there is a conscious purpose to bring about death."  *Commonwealth v. O'Searo*, 466 Pa. at

5.  "The term 'specific intent to kill' is a phrase that has been developed by the courts of this jurisdiction to express the state of mind ... which accompanies a killing which was willful, deliberate and premeditated, as required by the statute."  *Commonwealth v. O'Searo*, 466 Pa. at 234, 352 A.2d at 35.

6.  Although motive is not an essential element of murder, once a motive is established, it may be used to show the intent to kill. *Commonwealth v. Brantner*, 486 Pa. 518, 406 A.2d 1011 (1979); *Commonwealth v. Jones*, 355 Pa. 522, 50 A.2d 317 (1947).

240, 352 A.2d at 37. The circumstances recited by appellant do not, as a matter of law, foreclose a finding of premeditation, and since there is ample record evidence to support such a finding, we cannot conclude that the trial judge abused his discretion in holding that appellant possessed the specific intent to kill.[7]

## III

■ Appellant finally argues that the trial court erroneously refused to suppress her confession and that she should have been found guilty only of voluntary manslaughter. These issues, however, have not been preserved properly for appellate review. Appellant's written post-verdict motions were merely boilerplate challenges to the sufficiency of the evidence, a practice which we condemned in *Commonwealth v. Blair*, 460 Pa. 31, n.1, 331 A.2d 213, n.1 (1975). Although appellant filed a brief in support of her post-verdict motions in which she raised the issues of voluntary manslaughter and suppression of her confession, the trial judge expressly declined to address them.[8] These issues have been waived and

7. Appellant also contends that she lacked the mental capacity to form the requisite specific intent. *See Commonwealth v. Brantner*, 486 Pa. 518, 406 A.2d 1011 (1979); *Commonwealth v. Walzack*, 468 Pa. 210, 360 A.2d 914 (1976). The Commonwealth correctly argues, however, that this issue has been waived (1) since appellant neither offered evidence of diminished capacity nor argued this theory at trial, and (2) because it was not specifically raised in post-verdict motions and the trial judge refused to consider it, even though it was raised in a brief presented to the court. *See Commonwealth v. Gilmore*, 464 Pa. 464, 347 A.2d 305 (1975) and *Commonwealth ex rel Bell v. Rundle*, 420 Pa. 127, 216 A.2d 57, cert. denied 384 U.S. 966, 86 S.Ct. 1599, 16 L.Ed.2d 698 (1966) (appellate courts will not review issues and arguments not raised in the court below); *see also Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975) and *Commonwealth v. Carillo*, 483 Pa. 215, 395 A.2d 570 (1978) and discussion *infra*.

8. In his opinion, the trial judge stated:
   "The Defendant was advised on the record that she had ten days time from the date of verdict to file post-trial motions, plus an additional ten days to supplement them after receipt of the notes of testimony. Since [the issues of diminished capacity, suppression of evidence and voluntary manslaughter] were not raised in post-trial motions, they are deemed to be waived and will not be addressed by this Court." (Trial court op. at 6.)

will not be considered on appeal. *Commonwealth v. Carillo*, 483 Pa. 215, 395 A.2d 570 (1978); *see Commonwealth v. Gravely*, 486 Pa. 194, 404 A.2d 1296 (1979).

The Judgment of Sentence is affirmed.