451 A.2d 1344

**COMMONWEALTH of Pennsylvania**

v.

**Stephen WEINSTEIN, Appellant.**

Supreme Court of Pennsylvania.

Submitted Jan. 18, 1982.

Decided Oct. 26, 1982.

Malcolm W. Berkowitz, Philadelphia (court-appointed), for appellant.

Robert B. Lawler, Chief, Appeals Div., Mark Gurevitz, Philadelphia, for appellee.

Before O'BRIEN, C.J., and ROBERTS, NIX, LARSEN, FLAHERTY and HUTCHINSON, JJ.

## OPINION OF THE COURT

HUTCHINSON, Justice.

In May of 1968 appellant, Stephen Z. Weinstein, while represented by two attorneys, entered a plea of guilty to an indictment charging him with the murder of John W. Green, a freshman at the University of Pennsylvania, recently arrived from his home in the midwest. Appellant was sentenced by a three judge court to life imprisonment for first degree murder.[1]  On direct appeal in 1971, appellant

---

1. Under the Penal Code, Act of June 24, 1939, P.L. 872, § 701, 18 P.S. § 4701 (repealed in 1972, effective June 6, 1973), murder of the first degree was defined as: "All murder which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing . . . ." All other malicious and unlawful killing constituted second degree murder. Under the

cited as error, at his hearing on the degree of guilt, the rejection by the court of psychiatric testimony as to appellant's irresistible impulse. Appellant has now raised the same issue seeking relief under the Post Conviction Hearing Act, Act of January 25, 1966, P.L. (1965) 1580, § 1 *et seq.*, 19 P.S. § 1180–1 *et seq.*, asserting that he has been denied a constitutional right which requires retroactive application.[2] He appeals to us from Philadelphia Common Pleas' denial of that relief. We are of the opinion the particular psychiatric testimony as to irresistible impulse was not relevant to the issue of specific intent to kill. We therefore affirm the lower court's denial of relief.

The facts in this case were summarized in Justice Bell's opinion supporting affirmance on direct appeal in 1971.[3] Appellant first met his victim, Green, on October 16, 1967 when Green came into his Walnut Street store to purchase a pipe. Attracted to Green by his tight-fitting levis,

present Crimes Code, 18 Pa.C.S. § 2502, as amended, felony murder is murder in the second degree and the negation of specific intent to kill reduces all other murders to murder of the third degree.

2. Appellant also attacks the use of his confession at the degree of guilt hearing, arguing counsel was ineffective in not moving to suppress it. This claim has no merit and is rejected. It is apparent from the record of the P.C.H.A. hearing that trial counsel's failure to move to suppress appellant's confession did not induce appellant's guilty plea; rather appellant's decision to plead guilty was based on his realization that his chances for acquittal were slight, *See Commonwealth v. Jones,* 477 Pa. 266, 383 A.2d 926 (1978), his desire to avoid the threat of the death penalty, *See Commonwealth v. Chumley,* 482 Pa. 626, 648, 394 A.2d 497, 508 (1978), cert. denied, 440 U.S. 966, 99 S.Ct. 1515, 59 L.Ed.2d 781 (1979), and his desire "to get everything over with."

Considering the overwhelming evidence against appellant, coupled with the possibility of a death sentence, there was assuredly a reasonable basis designed to effectuate appellant's interest underlying counsel's advice to accept the plea agreement and not move to suppress the confession. Furthermore, trial counsel testified the confession seemed a useful basis for raising the insanity issue, a view which appears cogent to us.

3. In that proceeding this Court, evenly divided on the issue of the admissibility of psychiatric testimony on specific intent to kill, let the conviction stand. *Commonwealth v. Weinstein,* 442 Pa. 70, 274 A.2d 182 (1971).

appellant engaged Green in a conversation about boats, in which they had a mutual interest. Appellant then invited Green to visit his tobacco shop in the Philadelphia 1700 Complex, where he could see the boats on the Delaware River. Green accepted and a meeting was arranged for the following Sunday, October 22.

Before the Sunday meeting, appellant emptied into a small jar the contents of some ten sleeping capsules, intending to use them on Green. When Green came to appellant's Walnut Street shop on Sunday, appellant offered to get him a hamburger, and the unsuspecting Green accepted appellant's hospitality. Appellant sprinkled the powder on the hamburger and gave it to Green. Appellant and Green then took a taxicab to appellant's Philadelphia 1700 Complex shop. By the time they reached the shop, Green complained of drowsiness, and within an hour he fell to the floor unconscious. Shortly thereafter, appellant and a young friend, James Hammell, to whom appellant had previously telephoned, attempted to revive Green, but to no avail. *According to appellant's confession,* after Hammell left his shop, *he was suddenly filled with a strange sexual urge.*

*Appellant then strangled Green, first with a piece of rope and then with his bare hands,* and this killed him. Shortly afterward, appellant, with the assistance of Hammell and some other boys, attempted to dispose of Green's body. Unable to bury the body in a wooded area near Reading, Pennsylvania, appellant and Hammell eventually placed the body in a trunk, filled it with stones, and dumped it into the Delaware River near the Philadelphia 1700 Complex. Appellant subsequently fled to New York City where he was eventually apprehended by the New York police.

*Commonwealth v. Weinstein,* 442 Pa. 70, 75–76, 274 A.2d 182, 186–87 (1971) (footnotes omitted) (emphasis in original).

Appellant relies on *Commonwealth v. Walzack,* 468 Pa. 210, 360 A.2d 914 (1976), sustaining, on grounds of relevance, the admissibility of psychiatric testimony to the effect that a

pre-frontal lobotomy negated the specific intent to kill required by our statutes for first degree murder. Since the psychiatric testimony was first offered in *Weinstein* at the degree of guilt hearing solely to negate appellant's intent to kill and since appellant argues that its exclusion was erroneous, the testimony must, perforce, be judged on its relevance to that issue. After the Philadelphia Court of Common Pleas had found, without this testimony, that appellant was guilty of first degree murder, the psychiatrist's testimony was admitted as it related to sentencing. The parties in this P.C.H.A. proceeding have agreed that the testimony so received was of the same nature the expert would have given at the degree of guilt hearing. N.T., P.C.H.A. Hearing, at 6–7. We are, therefore, able to examine it in detail to determine its relevancy for the offered purpose. Upon such examination we find that defendant's psychiatrist was unable to give an opinion speaking to the presence or absence of specific intent, but only to the issue of irresistible impulse arising from defendant's uncontrollable sexual urge to continue strangling his victim till that strangulation climaxed in death. His argument necessarily implies that psychiatric testimony that he acted under an irresistible impulse is relevant to negate specific intent to kill and that the right to present such relevant testimony must be retroactively applied in his case.

Appellant's reliance on *Commonwealth v. Walzack*, 468 Pa. 210, 360 A.2d 914 (1976), suggests an over-hasty reading resulting in a failure to see the line so carefully drawn by Justice Nix. While announcing that this Court would, in the future, accept psychiatric testimony on a defendant's diminished capacity to think and, therefore, to form the intent to kill requisite to a finding of first degree murder, the Court expressly rejected irresistible impulse testimony.

> The doctrines of diminished capacity and irresistible impulse involve entirely distinct considerations. Irresistible impulse is a test for insanity which is broader than the M'Naghten test. Under the irresistible impulse test a person may avoid criminal responsibility even though he is

capable of distinguishing between right and wrong, and is fully aware of the nature and quality of his act provided he establishes that he was unable to refrain from acting. An accused offering evidence under the theory of diminished capacity *concedes general criminal liability.* The thrust of this doctrine is to challenge the capacity of the actor to possess a particular state of mind required by the legislature for the commission of a certain degree of the crime charged.

*Commonwealth v. Walzack, Id.,* 468 Pa. at 220–221, 360 A.2d at 919, 920, (emphasis in original).

*Walzack* does not recognize irresistible impulse as a test on either diminished capacity or specific intent. In fact, this Court specifically rejected irresistible impulse as a test for diminished capacity in *Commonwealth v. Carroll,* 412 Pa. 525, 194 A.2d 911 (1963). No irresistible impulse testimony was offered in *Walzack* and, properly read, the case held only that psychiatric testimony which speaks to the legislatively defined state of mind encompassing a specific intent to kill is admissible. *Walzack* does not say that all psychiatric testimony, regardless of its nature, is relevant to the question of specific intent. Rather it merely recognizes that competent psychiatric testimony which speaks to a defendant's ability to plan, deliberate and premeditate is relevant.

Prior to *Walzack* this Court, in *Commonwealth v. McCusker,* 448 Pa. 382, 292 A.2d 286 (1972) held for the first time that psychiatric testimony was competent and relevant to show that a defendant's subjective state of mind was such that he acted in a state of passion which reduced a homicide to manslaughter under the statutory definition then in effect. In so holding this Court critized our earlier line of cases holding that psychiatric opinion was so fraught with scientific uncertainty that the expert testimony of its practitioners was incompetent on the issue of specific intent. Examining *Walzack,* in the light of *McCusker,* it appears this Court has rejected the notion that the unreliability of psychiatric testimony is so great that expert psychiatric opinion adds nothing to the lay knowledge of the fact finder.

Hence, *Walzack* stands for the proposition that psychiatric testimony relevant to the cognitive functions of deliberation and premeditation is competent on the issue of specific intent to kill. Thus psychiatric testimony is competent in Pennsylvania on the issue of specific intent to kill if it speaks to mental disorders affecting the cognitive functions necessary to formulate a specific intent. Where, as here, it does not, it is irrelevant and hence inadmissible.

A theory holding expert testimony of medically defined general psychoses, which impair an individual's ability to control his conduct, relevant to the negation of specific intent was prospectively adopted by the D.C. Circuit in *United States v. Brawner,* 471 F.2d 969 (D.C.Cir.1979).[4] It was subsequently rejected in *Bethea v. United States,* 365 A.2d 64 (D.C.App.1976), as resting on a flawed analogy. *Brawner* held that if evidence of reduced criminal responsibility is relevant in cases involving intoxication, similar evidence must be relevant in cases involving mental illness. Following *Brawner* by four years, the *Bethea* Court rejected the asserted analogy in *Brawner,* noting the significant evidentiary distinctions between psychiatric abnormality and recognized incapacitating circumstances such as intoxication and epilepsy. *See* 3 West. New Eng.L.Rev. 583, 598 (1981). The latter conditions differ significantly from a psychosis which causes an irresistible impulse to kill. The rejected *Brawner* test for relevancy to specific intent, like the ALI test for the defense of insanity, relates to an illness which so distorts or confuses an individual's mental processes that he is unable to control his actions and thus is robbed of his freedom to adhere to the right and eschew the wrong. The M'Naghten test, which remains the law of Pennsylvania, deals on the other hand with knowledge of right from wrong and appreciation of the nature and quality of the act.

---

4. *Brawner* is generally cited for its rejection of the *Durham* test for insanity in favor of the test set forth in Section 4.01 of ALI's Model Penal Code. However, it also dealt with the separate issue of specific intent. *Brawner, supra,* at 998–1002.

Appellant misconstrues and confuses the legal principles involved in the admission of evidence on a general charge of murder, on murder in the first degree at trial or at a hearing on degree of guilt, and at sentencing. At trial for murder generally, the Commonwealth must establish (1) that a human being has unlawfully been killed, (2) that the person accused did the killing, (3) that the accused is of sound memory and discretion, knows right from wrong and appreciates the nature and quality of his act, i.e. sane under Pennsylvania's M'Naghten standard, and (4) that the killing was done with malice aforethought. Malice aforethought is the general intent prerequisite to a finding of murder. It distinguishes murder from any other type of homicide and includes cruelty, recklessness of consequences and a mind regardless of social duty. At trial or in a degree of guilt hearing, to establish murder in the first degree the Commonwealth must also prove that the defendant specifically intended to kill. Thus, in addition to the four requirements noted above it must prove premeditation and deliberation; otherwise the offense can rise no higher than second degree murder under applicable provisions of the 1939 Penal Code. *See* n. 1, *supra.* At sentencing, the defendant is free to introduce any evidence in mitigation which might persuade the court to be lenient in determining his penalty.

In some jurisdictions, appellant's offer of psychiatric testimony on his irresistible impulse would have been admissible to prove that he was not sane at the time of the offense. *See Durham v. United States,* 94 U.S.App.D.C. 228, 214 F.2d 862 (1954). That, however, is not the law in Pennsylvania. *Commonwealth v. Walzack,* 468 Pa. at 214, 360 A.2d at 916 makes this point abundantly clear:

> [T]oday's decision in no way affects the vitality of the M'Naghten test as the sole standard in this Commonwealth for determining criminal responsibility where the actor alleges mental illness or defect. Second, . . . , we do not view the position adopted today as inferentially accepting the irresistible impulse test which we have previously expressly rejected.

*See also Commonwealth v. Scarborough,* 491 Pa. 300, 305 n.
1, 421 A.2d 147, 149 n. 1 (1980); *Commonwealth v. Hicks,* 483
Pa. 305, 396 A.2d 1183 (1979). We adhere to our rejection of
irresistible impulse testimony as relevant to the negation of
specific intent. In so doing, it should be evident that we are
rejecting the *Brawner* formulation; instead we agree with
the reasoning of the court in *Bethea,* with regard to the
irrelevance of irresistible impulse testimony to negate spe-
cific intent.

The law of the United States, and indeed of all English
speaking jurisdictions, premises criminal responsibility on an
act coupled with moral culpability. *See Morissette v. United
States,* 342 U.S. 246, 72 S.Ct. 240, 96 L.Ed. 288 (1952);
*Dennis v. United States,* 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed.
1137 (1950). *See also Commonwealth v. Weiss,* 139 Pa. 247,
21 A.10 (1891). It requires a *mens rea,* an intent of varying
types, depending on the particular crime. This requirement
of moral culpability presupposes a freedom to turn from the
wrong and to seek the right, an innate human ability to act
in a rational manner. The concept of irresistible impulse, on
the other hand, is grounded in determinism. It denies
choice. For this reason, it is an alternate test of sanity in
those jurisdictions, not including Pennsylvania, which accept
it. If one accepts the proposition that a particular human
being has no control over his actions even though he knows
them to be wrong, then one cannot hold him criminally
responsible for those acts and still retain the concept that
every wrongful act must be coupled with intent if it is to
carry a criminal sanction. Thus, irresistible impulse does not
diminish intent. It swallows it up.

As a matter of syllogistic logic one might consider irresist-
ible impulse as valid a talisman for the determination of
criminal intent as the ability to distinguish right from
wrong. The refusal of jurisdictions such as Pennsylvania to
accept it is based not on such logic, but on policy. Within
the determinist assumptions of a large and influential school
of psychiatry, the negation of intent is an entirely logical
corollary. The assumptions of the law—rationality, free will

and choice—are otherwise, and within its system the application of irresistible impulse to determine sanity poses deeply troubling contradictions. The attempt to use it all too often finds the legal and medical professions talking at each other about different concepts designed for different purposes.

■ The law, in its effort to shape a rational social policy, grounded in the broadly shared assumptions of the individuals who make up society, cannot admit that acts an individual carefully plans and carries out to advance his own desire, when he knows those acts will result in the death of another human being, will not be punished simply because of the intensity or strangeness of that desire. Such an admission proceeds imperceptibly to the absurd result that the more strange and brutal the act the more likely the actor is to be relieved of its criminal consequences. Along the psychoanalytic continum the outrageous proves the innocence. In an oddly circular fashion the act establishes its cause as mental illness and the mental illness determines the act. Such analysis may be medically useful.[5] It is not legally useful. As etiology is not congruent with proximate cause, mental illness is not congruent with insanity. Although we do not exclude expert medical testimony on causation because its definitions differ from ours, we do require that medical testimony speak to us in our language and we accept it only where the two concepts overlap. The same should be true of psychiatric testimony on mental illness as it relates to the various distinct issues on which sanity is legally relevant.

■ Inability to speak in terms of the legal concept of specific intent, but only in the determinist language of irresistible impulse is instructive in analyzing the general reluctance of many courts to admit such testimony or to recognize the validity and relevance of the irresistible im-

5. Psychiatrists often object to the legal concept of specific intent as a naive oversimplification. They may be unable, or unwilling, to accept the legal rule that although intent is essential, motive is irrelevant. They cannot conceive of trying to understand human behavior without asking why the individual acted as he did. *See* Guttmacher and Weehofen, *Psychiatry and the Law* (1952).

pulse concept.[6] Justice Nix aptly states in *Walzack* that psychiatry has made great strides in the last decade. Such strides resulted in this Court's conclusion that psychiatric evidence is now competent for some purposes. However, such advances do not overcome the impediment of relevance. The element of specific intent in the first degree murder statute is a legal construct which bears only a coincidental resemblance to psychiatric definitions with respect to mental illness. *See* Diamond, *From Durham to Brawner, A Futile Journey,* 1973 Wash. U.L.Q. 109, *cited in* 30 Vand.L.Rev. 213, 221 (1977). *See also* Fingarette and Hasse, *supra,* and Dix, *Psychological Abnormalities as a Factor in Grading Criminal Liability: Diminished Capacity, Diminished Responsibility, and the Like,* 62 Crim.L.Criminology and Police Sci. 313, 325–26 (1971), *cited in* Wis.L.Rev. 628 (1979).

■ Thus, in this case, defendant's expert was unable to speak to the issue of specific intent, recognizable by the law, and was unable logically to relate defendant's underlying disease or mental defect to his uncontrollable act. Defendant was clearly able to formulate and carry out a plan or design. He carefully arranged the victim's presence at his

**6.** This psychiatric approach to the concepts of premeditation and deliberation, legal terms which specify the requisite mental state for first degree murder, is exemplified in the following analysis.

In broadest terms, the presumption is that a deliberate, premeditated killing is the full conscious affirmation of the act by one who has, in some fundamental way, the ability to perceive its criminal significance . . . .

. . . .

For a variety of mental conditions this normal presumption of fact does not hold true . . . . for example, in certain criminal acts arising out of schizophrenic "flatness of affect" or depressive psychotic states of absolute despair and guilt . . . .

Such persons may know the verbal formulas, but they do not share the background required to identify and weigh—in practice—the relevant factors, and the possible justification of excuses. So they cannot apply the verbal formulas in a practical way. They—and their deliberations—are in that respect irrational.

Fingarette and Hasse, *Mental Disabilities and Criminal Law,* 117–33 (1980).

With all respect to the utility of psychiatric presumptions in the diagnosis and treatment of mental illness, the terms "full conscious affirmation" and perception "in some fundamental way" lack meaning in the context of our legal definitions.

place of business, the victim's drugged helplessness and the presence of an accomplice, whom he asked to kill the victim, before he began the climactic act of strangulation he claims he could not control. By his own admission he arranged disposition of the body, fled to escape punishment and continued thereafter to fantasize pleasurably about the act of killing.

Accordingly, we hold psychiatric testimony to the effect that a defendant had a compulsion or irresistible impulse to kill irrelevant and, therefore, inadmissible on the issue of the defendant's specific intent to kill, within the statutory definition of first degree murder, in the presence of evidence that the killing was planned, premeditated and deliberate.

Affirmed.

McDERMOTT, J., took no part in the consideration of the merits of this case, however, he files a memorandum opinion.

LARSEN, J., files a concurring opinion.

LARSEN, Justice, concurring.

I join in the result reached by the majority opinion. However, I would limit all psychiatric evidence to a determination of sanity or insanity as set forth in the M'Naghten Rule. If an individual was insane per the M'Naghten Rule, then, obviously, that individual could have formed no specific intent to commit the crime in question.

MEMORANDUM *

McDERMOTT, Justice.

The majority assures us that *M'Naghten* is alive in Pennsylvania. Who he is and when he comes to town is, from this decision and its predecessors, not really knowable.

_____

* Although I took no part in the consideration of the merits of this case having been a member of the panel below which received appellant's plea, I write to address a question of law which transcends the particular issue presented here.

Whoever *M'Naghten* turns out to be, for the nonce at least, he is not Mr. Weinstein.

While the majority opinion dutifully affirms the *M'Naghten* Rule, it only obliquely defines it. The rule as stated most recently by Mr. Justice Roberts in *Commonwealth v. Roberts,* 496 Pa. 428, 437 A.2d 948 (1981) is the classic definition. Once stated, it is glaringly clear that *Commonwealth v. Walzack,* 468 Pa. 210, 360 A.2d 914 (1976), *Commonwealth v. McCusker,* 448 Pa. 382, 292 A.2d 286 (1972), and the present opinion are flirtations on the psychiatric rialto, where one can hire a psyche for any occasion.

The *M'Naghten* Rule, affirmed now and of unbroken precedent, is as Mr. Justice Roberts said:

[A]t the time of the committing of the act, the party accused was labouring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing, or if he did know it that he did not know what he was doing was wrong.

*Commonwealth v. Roberts,* 496 Pa. at 434, 437 A.2d at 951; *Commonwealth v. Woodhouse,* 401 Pa. 242, 249–50, 164 A.2d 98, 103 (1960), *quoting Queen v. M'Naghten,* 10 Cl. & Fin. 200, 8 Eng.Rep. 718 (1843). Mr. Justice Hutchinson is obliged to studiously distinguish the present case, not from *M'Naghten,* but from *Walzack* and *McCusker.*

In *Walzack, McCusker,* and now in *Weinstein II,* this Court allowed "psychiatric evidence" on whether there was specific intent in the commission of an offense. *Walzack,* 468 Pa. at 212, 360 A.2d at 915 (1976); *McCusker,* 448 Pa. at 391, 292 A.2d at 291 (1972). What the "psychiatric evidence" may be is the question put here. That the case answers, perhaps for the fourth time, that "irresistible impulse" is not a relevant concept shows the price we must pay for the lure to erudite analysis of evanescent psychiatric theories. *See Commonwealth v. Weinstein,* 442 Pa. 70, 274 A.2d 182 (1971) (affirmance by an equally divided Court). In prior opinions larded with conflicting psychiatric texts, our grip on the sane, sensible and now reaffirmed *M'Naghten* Rule trembles. In view of the decision here, once again allowing

undefined "psychiatric evidence," what is and what is not relevant will remain a question until every imaginable quirk of the human species is contested before this Court.

One need not go beyond the case at hand to prove the point. The dilution of *M'Naghten* by *Walzack* and *McCusker* has seeded this appeal. Appellant Weinstein did his killing in 1968. Here before, he now returns over a decade later, under the auspices of *Walzack* and *McCusker,* utilizing the ambiguity of "psychiatric evidence" that is now perpetuated. He will be back at the next slip of the pen.

This case, with its distinctions and justifications, affirms that "psychiatric evidence" is admissible when relevant. It does not say that that evidence must be relevant under the *M'Naghten* Rule. In short, it plunges us into determinations that are and will be experimental at best, leaving the trial courts without guidance and our dockets filled.

The *M'Naghten* Rule is clear. It sweeps away as irrelevant all proferred evidence which cannot say that by reason of a disease of the mind the defendant did not and could not know the difference between right and wrong at the time the crime was committed. Hence, "irresistible impulse," "diminished responsibility" are irrelevant, as is any evidence that is not offered to satisfy the structure of the *M'Naghten* Rule, including the litany recited by Justice Horace Stern in *Commonwealth v. Neill,* 362 Pa. 507, 67 A.2d 276 (1949):

Certainly neither social maladjustment, nor lack of self-control, nor impulsiveness, nor psycho-neurosis, nor emotional instability, nor chronic malaria, nor all of such conditions combined, constitute insanity within the criminal-law conception of that term.

362 Pa. at 514, 515, 67 A.2d at 280. In short, we should make it clear that only unambiguous psychiatric evidence, offered to prove insanity under the *M'Naghten* Rule, is relevant and acceptable.

To allow evidence that cannot say with certainty that one is insane under the definition of *M'Naghten* is to allow anyone to say anything they wish, hardly a rule of relevance. Hence, we should say that evidence of alleged insan-

ity is irrelevant unless that evidence offers that by reason of a disease of the mind, a disease objectively and psychiatrically measurable, the defendant did not know and could not know the difference between right and wrong at the time the crime was committed.