474 A.2d 313

**COMMONWEALTH of Pennsylvania**

v.

**Francis J. KENNY, Appellant.**

Superior Court of Pennsylvania.

Submitted Oct. 24, 1983.

Filed March 30, 1984.

Kevin P. Kelly, Philadelphia, for appellant.

Robert B. Lawler, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before WICKERSHAM, BROSKY and HOFFMAN, JJ.

BROSKY, Judge:

Appellant was convicted, following a non-jury trial, of the murder of his wife and the poisoning of his infant son. He was sentenced to a term of life imprisonment on the first degree murder conviction and received lesser concurrent sentences on the charges of aggravated assault and possession of an instrument of crime.

At trial and before us appellant admits to having killed his wife, but contends that he lacked the specific

intent to kill necessary to a first degree murder conviction. He also contends that prejudicial evidence was introduced at trial which entitles him to a new trial. We affirm.

We will begin our discussion with appellant's claim that the murder conviction is not supported by sufficient evidence, since he argues, the evidence shows that he lacked the specific intent to kill.

The well-established test for reviewing claims of insufficiency of evidence was recently stated by our court in *Commonwealth v. Hogan,* 321 Pa.Super. 309, 312, 468 A.2d 493, 495 (1983) as follows:

> "The test of sufficiency of the evidence—irrespective of whether it is direct or circumstantial, or both—is whether, accepting as true all the evidence and all reasonable inferences therefrom, upon which if believed the [trier of fact] could properly have based [the] verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime or crimes of which he has been convicted." *Commonwealth v. Minoske,* 295 Pa.Super. 192, 198, 441 A.2d 414, 417 (1982) quoting *Commonwealth v. Frye,* 433 Pa. 473, 481, 252 A.2d 580, 584 (1969). Accord: *Commonwealth v. Giles,* [500] Pa. [413, 415], 456 A.2d 1356, 1357 (1983); *Commonwealth v. Wilcox,* 310 Pa.Super. 331, 336, 456 A.2d 637, 639 (1983). In reviewing the evidence, we must consider it in the light most favorable to the Commonwealth, which won the verdict in the trial court. *Commonwealth v. Durrant,* [501] Pa. [147, 151], 460 A.2d 732, 733 (1983); *Commonwealth v. Bachert,* [499] Pa. [398, 406], 453 A.2d 931, 933 (1982); *Commonwealth v. Kennedy,* [499] Pa. [389, 392], 453 A.2d 927, 928 (1982).

To convict appellant of murder in the first degree the fact finder must have found that he committed an intentional killing—i.e. a willful, deliberate or premeditated killing. See 18 Pa.C.S. § 2502(a), (d).

■ In *Commonwealth v. Green,* 493 Pa. 409, 426 A.2d 614, 606–617 (1981) our Supreme Court explained that

"Since one's state of mind is subjective, the specific intent to kill may be inferred from the perpetrator's conduct, including the intentional use of a deadly weapon in a vital part of the body of another human being."

Furthermore, the *Green* opinion explains that

Moreover, our cases have held that the period of premeditation necessary to form the requisite specific intent may be very brief, *Commonwealth v. Robinson*, 468 Pa. [575] at 583, 364 A.2d [665] at 669. Indeed, "design to kill can be formulated in a fraction of a second," and premeditation and deliberation exist "whenever there is a conscious purpose to bring about death." (citation omitted).

*Id.*, 493 Pa. at 415, 426 A.2d at 617.

The evidence adduced at trial indicated that appellant and his wife had been discussing the subject of a marital separation for approximately two weeks prior to Mrs. Kenny's death. During the morning of September 14, 1980 the couple met with Mrs. Kenny's mother to discuss the terms of the separation. Later in the day Mrs. Kenney had dinner at her grandmother's house. The Kenny's infant son, Frank, Jr., was with his mother at dinner, but Mr. Kenny apparently remained at home. Sometime after her return to their home on the evening of the 14th, Mrs. Kenny and her husband apparently argued. Mr. Kenny retrieved a knife from the kitchen. The couple struggled, Mr. Kenny strangled his wife and then stabbed her with the knife, inflicting a deep wound in her chest that caused internal bleeding. Mrs. Kenny died late on the 14th or early in the morning of the 15th.

After strangling and stabbing his wife, Mr. Kenny carried her to their bedroom on the second floor of the home and placed her in the bed. He placed the infant in his crib and then inflicted wounds upon himself by slashing his wrists.

Mr. Kenny apparently drifted in and out of consciousness throughout the night, but at some point he went to the kitchen on the first floor and mixed iced tea with Drano. He then fed the concoction to his son.

At approximately 9:00 on the morning of the 15th Mr. Kenny called his mother-in-law at her place of employment and asked her to go to his home to "save the baby". When Mrs. Mattia arrived she found her daughter's dead body in the couple's bed where Mr. Kenny was also lying, face down, and bleeding from his wrists.

Mr. Kenny and his son were both hospitalized and survived the tragedy.

It is appellant's contention that he lacked the specific intent to kill because he suffered from "diminished capacity."

In *Commonwealth v. Walzack*, 468 Pa. 210, 360 A.2d 914 (1976) our Supreme Court held that psychiatric evidence could be used in support of the diminished capacity defense which it explained as follows:

> An accused offering evidence under the theory of diminished capacity *concedes general criminal liability.* The thrust of this doctrine is to challenge the capacity of the actor to possess a particular state of mind required by the legislature for the commission of a certain degree of the crime charged.

*Id.*, 468 Pa. at 221, 360 A.2d at 919–920. (emphasis in original).

The court distinguished the diminished capacity defense which it accepted from the doctrine of irresistible impulse, which it did not accept. As the court said,

> "irresistible impulse is a test for insanity which is broader than the McNaghten test. Under the irresistible impulse test a person may avoid criminal responsibility even though he is capable of distinguishing between right and wrong, and is fully aware of the nature and quality of his act provided he establishes that he was unable to refrain from acting."

In two later cases the Supreme Court indicated again that the diminished capacity defense is a limited one and is quite different than the theory of irresistible impulse.

First, in *Commonwealth v. Weinstein*, 499 Pa. 106, 451 A.2d 1344 (1982) the Court held that the proffered psychiatric testimony did not tend to prove diminished capacity, but instead referred to an irresistible impulse under which the appellant was supposed to have acted. The court again rejected the irresistible impulse theory as a defense to murder. Thus the court rejected appellant's attempt to introduce psychiatric evidence of his uncontrollable sexual urge to continue strangling his victim until the strangulation climaxed in death.

Most recently in *Commonwealth v. Zettlemoyer*, 500 Pa. 16, 454 A.2d 937 (1982), the court rejected appellant's argument that he should have been permitted to introduce psychiatric testimony that he had a "schizoid personality with paranoid features." The court found that the proffered testimony was again an attempt to introduce evidence of irresistible impulse. The court explained:

By whatever name psychiatrist, or doctors or lawyers call it, an inability to control one's self under certain circumstances is legally insufficient to justify an acquittal of murder, or a reduction of a first degree murder killing to [a murder of a lesser] degree.

The doctrine of "irresistible impulse" or in the modern psychiatric vernacular "inability to control one's self", *whether used to denote legal insanity, or as a device to escape criminal responsibility for one's acts or to reduce the criminal responsibility for one's acts or to reduce the crime or its degree, has always been rejected in Pennsylvania.* (emphasis in original).

*Id.*, 500 Pa. at 34, 454 A.2d at 946.

We conclude that the evidence which appellant says showed his diminished capacity, like that proffered in *Zettlemoyer* and *Weinstein*, instead tended to show only irresistible impulse.

The psychiatrist testified in part as follows:

Q. Doctor, do you have a medical opinion to a reasonable medical certainty as to the Defendant's state of mind at the time of the incident?

A.  Yes, I do.

Q.  Would you inform the Court of that, please?

A.  The state of mind at the time was one of complete and total rage. *There was no emotional control.* And it was an absolute overwhelming outflow of emotions that were not under conscious control.

He was not able in any way to direct his actions at that particular time.

\*       \*       \*       \*       \*       \*

Q.  Doctor, if you had to put a term on Mr. Kenny's mental state, how would you do so, if you can?

A.  On his mental state currently?

Q.  No; at the time of the incident.

A.  *At the time of the incident, the only thing I can say is that he was totally and completely out of control.*

Q.  And that is from a mental standpoint, of course?

A.  Yes.

And finally and most telling, the doctor testified on cross-examination:

Q.  Doctor, you have described Mr. Kenny's mental state at the time of his actions against his wife. Let's focus on his wife first. Could you characterize Mr. Kenny's actions as irresistible impulse, something that he couldn't control?

A.  I don't believe that he could control himself.

Q.  *So it is an irresistible impulse?*

A.  *Yes.*

The psychiatric testimony introduced by appellant tended to show that he had had an unhappy childhood which led him to have an extreme reaction to the potential dissolution of his family. Tragic as appellant's circumstances may have been, the evidence nonetheless fails to disclose a diminished capacity on his part, but rather, showed that he may have acted under an irresistible impulse.

■ We also must reject appellant's claim to new trial which he premises on the introduction of prejudicial evidence.

The two instances in question are: (1) the questioning of a medical expert as to whether Mrs. Kenny was pregnant at the time of her death, and (2) the introduction of evidence of prior criminal activity by appellant.

We will dispense with appellant's first argument by noting that the answer elicited by the medical examiner was that Mrs. Kenny had no evidence of being pregnant. While the line of questioning may not have been probative, it was harmless. We fail to see how evidence that his wife was not pregnant was prejudicial to appellant.[1]

■ Appellant also contends that the introduction of evidence that he had tried to kill his first wife was prejudicial to him.

The evidence was introduced during cross-examination of defendant's psychiatric witness. The witness, Dr. Glass, had testified at length during his direct examination as to appellant's family history. While the doctor indicated that appellant had been married prior to his marriage to the deceased victim, he did not mention that appellant had told him that when his first marriage ended, he tried to kill his first wife. The report prepared by Dr. Glass prior to trial indicated that appellant had indeed told him of the attempt to kill his first wife. The prosecutor questioned Dr. Glass about the previous attempt and appellant objected.

Certainly it is true that as a general rule, evidence of prior criminal activity by a defendant is inadmissible. *Commonwealth v. Martinez*, 301 Pa.Super. 121, 447 A.2d 272 (1982). There are circumstances in which such evidence is

---

**1.** The inference as to motive which appellant suggests might have been drawn from this evidence, would have been drawn not from the medical examiner's testimony, but from the report made by appellant's psychiatric expert. ·

admissible. See *Commonwealth v. Martinez, supra; Commonwealth v. Shealey,* 324 Pa.Super. 56, 471 A.2d 459 (1984) (evidence of prior criminal activity can be introduced to show motive, intent, absence of mistake or accident, common scheme or identity.) While we conclude that none of these circumstances is present in this case, we nonetheless find no reversible error in the cross-examination.[2]

We note first that this trial was held before a judge sitting as the fact finder. Our Supreme Court has held the view that judicial fact finders are capable of disregarding most prejudicial evidence. See *Commonwealth v. Council,* 491 Pa. 434, 421 A.2d 623, 625 (1980). See also *Commonwealth v. Seigrist,* 253 Pa.Super. 411, 385 A.2d 405 (1978); *Commonwealth v. Stokes,* 279 Pa.Super. 361, 421 A.2d 240 (1980).

Here the evidence was introduced during the cross-examination of an expert witness who had described appellant's unhappy life, and in fact had said that appellant was not given to acts of rage or violence. Especially since this was a non-jury trial we will not find reversible error in the prosecution's cross-examination, which pointed out the inaccuracy of Dr. Glass' conclusion that appellant was not given to acts of violence. The judge was certainly capable of disregarding any prejudicial aspect the evidence may have had. Furthermore, the evidence of appellant's guilt was very strong. In fact, he admitted the killing, but argued only that he should not be found criminally liable for it because of his diminished capacity to form the intent to kill. Under these circumstances, at a non-jury trial, the error, if any, was, at most, harmless. *See Commonwealth v. Stokes, supra.*

Judgment of sentence affirmed.

2. Appellant states in his brief that he properly objected to this line of questioning. In fact it seems to us that his objection was not made until the prosecutor made a sarcastic comment about the safety of any future wife of appellant's. We will assume, however, that the objection encompassed the entire line of questioning.