479 A.2d 1077

**COMMONWEALTH of Pennsylvania**

**v.**

**David DAVIS, Appellant.**

Superior Court of Pennsylvania.

Argued March 14, 1984.

Filed Aug. 10, 1984.

Brian J. Cali, Scranton, for appellant.

Amil M. Minora, Assistant District Attorney, Scranton, for Commonwealth, appellee.

Before CAVANAUGH, WIEAND and CIRILLO, JJ.

WIEAND, Judge:

David Davis entered a general plea of guilty to murder in connection with the shooting death of his wife, Margaret. After an evidentiary hearing before the Honorable James Munley, Davis was found guilty of murder in the first degree. Post-verdict motions were denied, and Davis was sentenced to serve a term of imprisonment for life. He contends that the evidence was insufficient to sustain the court's finding of murder in the first degree. We disagree and affirm.

To prove murder in the first degree, the Commonwealth was required to show that appellant shot his wife willfully, deliberately and with premeditation, i.e., with a fully formed, specific intent to kill. *Commonwealth v. Weinstein*, 499 Pa. 106, 115, 451 A.2d 1344, 1348 (1982). See: *Commonwealth v. Moore*, 473 Pa. 169, 172–173, 373 A.2d 1101, 1103 (1977). This intent may be inferred from statements made by the accused and also from attendant circumstances. An inference that appellant intended to kill may be drawn from the fact that he used a deadly weapon to inflict injury to a vital part of his victim's body. *Commonwealth v. Rodgers*, 500 Pa. 405, 409, 456 A.2d 1352, 1354 (1983); *Commonwealth v. Green*, 493 Pa. 409, 414–415, 426 A.2d 614, 616–617 (1981). In reviewing the sufficiency of the evidence to support a finding of murder in the first degree, we view all the evidence admitted and all reasonable inferences to be drawn therefrom in the light most favorable to the Commonwealth. Then we determine whether the evidence, so viewed, is sufficient to permit a finding beyond a reasonable doubt that each element of first degree murder was present. *Commonwealth v. Russell*, 313 Pa.Super. 534, 538, 460 A.2d 316, 318 (1983).

In the instant case appellant admitted that he had shot his wife during the early morning hours of June 9, 1980. He and his wife had been married for four years; one child had been born of their marriage. The marriage was marked by several separations which frequently involved violent conduct by appellant; but all prior separations had eventually been followed by reconciliation. A final separation occurred in April, 1980, when Margaret took the child of the marriage and a son by a prior marriage and moved into an apartment in the City of Scranton. Four days prior to Margaret's death, appellant told her former husband, Michael Frazier, that if Margaret didn't come back and quit running away, he was going to "waste her." On the same day, appellant told his wife's aunt, Mary Holodnak, that Margaret had left him again and had taken their daughter, Allison, and that he would blow his wife's head off to get Allison back. After these threats had become known to Margaret and her parents, they asked a family friend, John Ritter, to look after Margaret. On the night preceding the shooting and at Margaret's request, Ritter slept in the same apartment. A loaded revolver was placed between the mattress and the bed spring of Margaret's bed. Ritter slept on the floor.

At or about 4:00 a.m. on June 9, appellant broke through the bedroom window, grabbed Margaret and, with a knife at her throat, said "Margaret, I'm going to slice your throat." Ritter, awakened by these events, retrieved the gun and, pointing it at appellant, said to him, "Leave her alone or I will blow you away." Margaret broke away and ran as Ritter and the appellant engaged in a struggle for the gun. One shot was fired before Ritter was rendered unconscious because of blows administered by appellant. Appellant then pursued his wife who had run from the apartment. He paused on the porch to take aim and fire at the running figure of his wife. Then he resumed his pursuit, following her between parked cars and firing a second shot. When he finally caught her as she returned to the apartment door, he asked her to go away with him, and

she replied, "O.K." However, she again managed to break away, and once more she ran. Again appellant caught her. This time he placed the revolver, a .44 magnum, against her throat and pulled the trigger.

■ In *Commonwealth v. Gardner,* 490 Pa. 421, 416 A.2d 1007 (1980), the Supreme Court held that a specific intent to kill could be inferred from shooting the decedent twice at close range, once in the neck. In the instant case, appellant's act of holding the gun against his wife's neck and firing was sufficient, without more, to sustain the trial court's finding of an intentional killing. However, there was a great deal more. Appellant's prior threats to kill his wife, his breaking into her bedroom during the early hours of the morning, his threat to cut her throat as he held a knife against her neck, and the several shots fired at her after she had fled the apartment constituted additional circumstances lending credence to the trial court's finding.

■ Appellant argues that a deliberate and intentional killing cannot be inferred because he did not have a gun when he entered his wife's apartment and did not thereafter have the opportunity to form a deliberate and premeditated intent to kill. This is wholly without merit. An intent to kill can be formed in a fraction of a second. *Commonwealth v. O'Searo,* 466 Pa. 224, 239–240, 352 A.2d 30, 37–38 (1976). All that is required is a conscious, fully formed intent to bring about the death of another. *Id.* Moreover, appellant's argument ignores the fact that the knife with which he broke into his wife's apartment in the middle of the night was also a deadly weapon and bespeaks the purpose for which he came.

■ Appellant argues that a finding of murder in the first degree was improper because he had a diminished mental capacity. This argument also lacks merit. Diminished capacity is an extremely limited defense. *Commonwealth v. Zettlemoyer,* 500 Pa. 16, 28, 454 A.2d 937, 943 (1982). Personality disorders such as a diagnosed schizoid

personality are irrelevant. *Id.*, 500 Pa. at 28–30, 454 A.2d at 943–944. In the absence of a mental disorder which affects the cognitive functions of deliberation and premeditation so as to preclude an ability to formulate and carry out a plan or design, the defense will not avail to reduce the degree of a killing. *Id.*, 500 Pa. at 28, 454 A.2d at 943. See also: *Commonwealth v. Weinstein*, 499 Pa. 106, 113–114, 118–119, 451 A.2d 1344, 1347, 1350 (1982).

The testimony of experts called by the defense was to the effect that appellant had been experiencing a schizophrenic episode at the time of the shooting which caused him to act in desperation to repossess his wife and survive psychologically. The weight to be given this testimony, of course, was for the trier of the facts. The trial judge could reject appellant's psychiatric testimony or give it such weight and credibility as, in his judgment, it deserved. *Commonwealth v. Tempest*, 496 Pa. 436, 441, 437 A.2d 952, 954–955 (1981); *Commonwealth v. Walzack*, 468 Pa. 210, 219 n. 9, 360 A.2d 914, 918 n. 9 (1976). In fact, appellant's psychiatric testimony was contradicted, and other evidence showed that appellant had been in control of his actions. This had been observed by several witnesses after appellant surrendered himself to police who were at the scene to investigate the shooting. The testimony given by these lay witnesses could properly be considered by the trial judge. *Commonwealth v. Tempest, supra* 496 Pa. at 440, 437 A.2d at 954; *Commonwealth v. Tyson*, 485 Pa. 344, 352–353, 402 A.2d 995, 999 (1979); *Commonwealth v. Flynn*, 314 Pa.Super. 162, 171–172, 460 A.2d 816, 821 (1983). The trial court determined the credibility issue in favor of the Commonwealth and concluded that appellant had been mentally capable of forming a specific intent to kill his wife and possessed cognitive control of his actions. Our review of the record discloses full evidentiary support for the trial court's finding.

Affirmed.