467 A.2d 22

**COMMONWEALTH of Pennsylvania**

v.

**James Edward HARTZELL, Appellant.**

Superior Court of Pennsylvania.

Submitted Feb. 24, 1983.

Filed Oct. 14, 1983.

Petition for Allowance of Appeal Denied Feb. 3, 1984.

John Patrick Fonzo, Franklin, for appellant.

William G. Martin, Jr., Assistant District Attorney, Franklin, for Com., appellee.

Before SPAETH, BROSKY and MONTEMURO, JJ.

MONTEMURO, Judge:

This is an appeal from the judgment of sentence of the Court of Common Pleas of Venango County entered against the appellant, James Edward Hartzell. Appellant was charged with criminal homicide in connection with the shooting death of Linda Jane Miller. A consolidated jury trial was held for the appellant and a co-defendant, Robert Middleton, in which the appellant was found guilty of first degree murder.[1] His motions for a new trial and in arrest of judgment were denied by the trial court and he was sentenced to life imprisonment.

The appellant raises several claims of error herein. First, he contends that the evidence was insufficient to sustain a verdict of guilty to the charge of first-degree murder.[2] Second, he contends that the trial court erred in allowing

---

1. Co-defendant, Robert Middleton, was found to be guilty of second-degree murder.

2. Appellant also contends that the weight of the evidence supports his alibi defense, and therefore, his motion for new trial should have been granted. This argument is incorporated in the insufficiency claim and will not be addressed at length separately. However, if we were to address it separately, we would find it to have no merit.

testimony concerning other criminal acts of the appellant. Third, he contends that he was denied a fair trial because his trial was consolidated with that of co-defendant, Robert Middleton. Finally, he contends that the trial court erred in allowing prejudicial testimony by a police officer concerning boot prints at the scene of the crime committed subsequent to the shooting of Miller. After due consideration of the appellant's claims, we find them to lack merit, and consequently, would affirm the judgment of sentence of the trial court.

The appellant's claims will be addressed *seriatim* beginning with the contention that the evidence was insufficient to sustain the verdict. The appellant's argument is trifold. He contends the evidence was insufficient to prove; that he was present at the scene of the homicide; that he fired the fatal shot; and that he possessed the requisite intent to kill in order to sustain a conviction of first degree murder.

The standard which we are required to apply in reviewing the appellant's insufficiency claim was set forth by this court in *Commonwealth v. Volk*, 298 Pa.Super. 294, 300, 444 A.2d 1182, 1184 (1982), in which the court said:

First, we must regard all the evidence in the light most favorable to the Commonwealth, accepting as true all evidence upon which the factfinder could have based the verdict and then we must ask whether that evidence along with all reasonable inferences to be drawn therefrom, was sufficient to prove guilt beyond a reasonable doubt. *Commonwealth v. Anderson*, 265 Pa.Super. 494, 402 A.2d 546 (1979); *Commonwealth v. Eddington*, 255 Pa.Super. 25, 386 A.2d 117 (1978); *Commonwealth v. Luther*, 266 Pa.Super. 240, 403 A.2d 1329 (1979).

At this point, a review of the evidence in light of this standard is appropriate.

On the evening of January 17, 1981, Robert Middleton, Jerry Rice and John Perry drove to the appellant's house to attempt to sell to the appellant a set of stereo speakers and a .44 magnum handgun which Rice and Middleton had obtained in a burglary earlier. The handgun was loaded

and kept in the glove compartment of Rice's automobile. While at the appellant's house they each had a few whiskey and orange juice cocktails and discussed driving into Oil City to "rob drunks". They also discussed going to Rouseville to rob one Carrie Schilk, a cousin of the appellant. Rice, Middleton, Perry and the appellant left the appellant's home at approximately 10:30 to 11:00 P.M. They were all in Rice's automobile. Perry was dropped off at his house in Pin Oak Village and the others proceeded to Oil City.

Once there, Rice parked the vehicle. The three men went to a bar called "Scrubby's". Middleton and appellant stayed and had a drink. Rice left because he was underage and the barmaid refused to serve him. Rice went out to the street and waited for a victim. Rice soon became cold and returned to his automobile where he was met by Middleton and the appellant. It was approximately 1:00 A.M.

It was at this time the criminal activity, later described by some as a "crime spree", began. Rice saw a man who was carrying several cartons leaving a nearby bar. The man got into his car. After some discussion among the felons, Rice exited the vehicle with the gun and walked over to the car and knocked on the window. The man, one William Gesin, opened the window whereupon Rice produced the pistol and demanded Gesin's wallet. Rice took the proffered wallet and told Gesin to drive straight over the hill. He then returned to the car where the proceeds of the crime were divided.

The three men then decided to leave and re-enter Oil City as an evasive maneuver to escape detection for the Gesin robbery. Rice was driving, Middleton was in the front passenger seat and the appellant was sitting behind Middleton in the rear seat. The gun was on an arm rest between Rice and Middleton. They drove a few miles out of town and then returned to Oil City, with their ultimate destination being Rouseville. They stopped on the roadside across from the Oasis Bar so that Rice and the appellant could urinate.

At that unfortunate moment, Linda Jane Miller walked out of the Oasis Bar and toward her pick-up truck in the parking lot. After some discussion among the three men, Middleton retrieved the handgun from the car and walked across the street for the purpose of robbing Linda Miller. The appellant said to Middleton words to the effect "if she was ugly to blow her away." Middleton followed Miller to her truck; however, she reached the truck and drove away before he could consumate the crime.

Middleton returned to the car and, again after some discussion, the three men decided to follow her to her home and rob her there. They did, in fact, follow her toward Rouseville. Rice wanted to pass Miller because the truck was weaving back and forth across the road. The appellant said to Rice "this is a good road for it." He also instructed Rice as to the exact moment to pass.

As Rice passed the truck he heard a shot from the back seat. The appellant said that he thought he got her. They continued up the road for about three-quarters of a mile, turned around and returned to where Miller's truck had crashed into a ditch. Middleton got out of the car and talked to another motorist who had stopped to investigate. Middleton said he would call the police. Miller was not visible in the truck, probably because she had slumped to the floor. The men then left and proceeded to Rouseville.

The appellant gave directions to Rice leading to the home of Carrie Schilk, the appellant's cousin. Rice's testimony indicates that the entire time subsequent to the shooting of Miller, the gun was in the appellant's possession. At Schilk's house, Rice and Middleton went to the door while the appellant waited around the corner of the house. Schilk opened the door, and Middleton and Rice grabbed her and turned her around. The appellant entered and hit her on the head with the butt of the handgun. The force of the blow shattered the pistol grips. They proceeded to rob Schilk of money and personal items, and then left. Middleton also took Schilk's pick-up truck.

Subsequent to the Schilk robbery, Middleton abandoned the truck and the three men went to a restaurant called the Villa Italia. At trial the night manager, Charles Latchaw, identified all three men as being present at the restaurant at approximately 4:00 A.M. After eating, the men left, split up the stolen items and then returned to their respective homes.

Later that morning, Rice surrendered to the police and gave them a statement implicating Middleton and the appellant. He also directed the police to where the pistol and wallet had been discarded.

The appellant raised an alibi defense. He testified that he had been with Rice and Middleton for part of the night but that they had dropped him off at his home at approximately 1:30 A.M. The appellant's wife testified that the appellant was home at 1:30 A.M. and a neighbor testified that he saw appellant walking up his driveway at approximately 1:30 A.M. The jury discredited the alibi testimony.

Robert Middleton offered no testimony.

After reviewing the evidence, we conclude that the evidence offered by the Commonwealth was sufficient to sustain a verdict of guilty of first degree murder beyond a reasonable doubt.

First, the testimony of Rice clearly places the appellant at the crime scene. Although the testimony of an accomplice must be carefully scrutinized, *Commonwealth v. Hudson*, 489 Pa. 620, 414 A.2d 1381 (1980), it is unquestioned that a jury may convict on the uncorroborated testimony of an accomplice. *Commonwealth v. Goldblum*, 498 Pa. 455, 447 A.2d 234 (1982); *Commonwealth v. Cristina*, 481 Pa. 44, 391 A.2d 1307 (1978), *cert. denied Cristina v. Pennsylvania*, 440 U.S. 925, 99 S.Ct. 1255, 59 L.Ed.2d 479 (1979). Even though the appellant characterized Rice as a "corrupt and polluted source," the verdict makes it evident that the jury chose to believe him and disbelieve the appellant's alibi testimony. Credibility is a factual issue the resolution of which is for the trier of fact. *Commonwealth*

*v. Penn,* 497 Pa. 232, 439 A.2d 1154 (1982), *cert. denied, Penn v. Pennsylvania,* 456 U.S. 980, 102 S.Ct. 2251, 72 L.Ed.2d 857 (1982); *Commonwealth v. Cristina, supra; Commonwealth v. Vitacolonna,* 297 Pa.Super. 284, 443 A.2d 838 (1982).

At trial and on appeal the appellant attempts to derogate Rice's testimony by pointing out small inconsistencies. The matters are trivial and do little to cast doubt on the veracity of the witness' testimony. His story "was not so contradictory as to render it incapable of reasonable reconciliation." *Commonwealth v. Cristina,* supra 481 Pa. at 51, 391 A.2d at 1311.

Moreover, Rice's testimony is corroborated in many respects by the testimony of other Commonwealth witnesses. Two witnesses, one of which was the barmaid at Scrubby's, testified to seeing Rice, Middleton and the appellant together on the night in question. William Gesin's testimony concerning the robbery matched Rice's testimony in detail. Carrie Schilk's testimony was also virtually identical to that of Rice concerning her robbery. Finally, the testimony of Charles Latchaw, the night manager of the Villa Italia, positively identifying all three men as being in the restaurant at 4:00 A.M. lends strong support to Rice's testimony and seriously detracts from that of the appellant.

The appellant's second contention is that the evidence was insufficient to show that he fired the shot which killed Linda Jane Miller. Again we disagree. When the appellant and the others first saw Miller outside the Oasis Bar, he said, if she's ugly, blow her away. The appellant picked the stretch of road on which to pass Miller's truck and also said, "this is a good road for it." The gun was on the arm rest capable of easy access to either Middleton or the appellant. However, Rice heard the shot come from the back seat, and also heard the appellant say he thought he got her. He also testified that the appellant had the gun in his control thereafter.

While there was no direct evidence that the appellant fired the shot, there was significant evidence from which the jury could reasonably infer that he did in fact do so.

Finally, the appellant contends that the evidence was insufficient to establish the requisite intent to kill to support a verdict of guilty of first degree murder. Under 18 Pa.C.S.A. § 2502(a), murder of the first degree is defined as a "criminal homicide ... when it is committed by an intentional killing." Subsection (d) defines intentional killing as "[k]illing by means of poison, or by lying in wait, or by any other kind of willful, deliberate or premeditated killing."

In *Commonwealth v. Green*, 493 Pa. 409, 426 A.2d 614 (1981), the supreme court reiterated the standard for establishing the specific intent to kill:

> In order to sustain a conviction of first degree murder, the Commonwealth must prove beyond a reasonable doubt, that the killing was "willful, deliberate and premeditated." *Commonwealth v. Robinson*, 468 Pa. 575, 364 A.2d 665 (1975); *Commonwealth v. O'Searo*, 466 Pa. 224, 352 A.2d 30 (1976); 18 Pa.C.S.A. § 2502. Since one's state of mind is subjective, the specific intent to kill may be inferred from the perpetrator's conduct, including the intentional use of a deadly weapon on a vital part of the body of another human being. *Commonwealth v. O'Searo, supra; Commonwealth v. Agie*, 449 Pa. 187, 296 A.2d 741 (1972).

Id. 493 Pa. at 414–15, 426 A.2d at 616–17. See also *Commonwealth v. Pronkoskie*, 498 Pa. 245, 445 A.2d 1203 (1982); *Commonwealth v. Gardner*, 490 Pa. 421, 416 A.2d 1007 (1980); *Commonwealth v. Meredith*, 490 Pa. 303, 416 A.2d 481 (1980).

The victim herein was killed by a single bullet fired from a .44 magnum handgun. According to the testimony of Dr. Howard Griffen, the pathologist who performed the autopsy, the bullet entered the victim's left ear and exited behind and above the victim's right ear. The bullet caused extensive damage to the brain resulting in instantaneous death.

From this alone the jury could infer that the appellant had the specific intent to kill.

■ Appellant, however, contends that there is no evidence of premeditation or deliberation. Again the appellant's argument must fail. The premeditation required to establish the specific intent to kill can be formed within a short time. *Commonwealth v. Wright*, 458 Pa. 236, 328 A.2d 514 (1974).

Considering the statement of the appellant to the effect of "if she's ugly blow her away" and appellant's subsequent actions, we conclude the evidence was sufficient to establish premeditation.[3] *Commonwealth v. Pronkoskie, supra; Commonwealth v. Williams*, 483 Pa. 293, 396 A.2d 1177 (1978), *cert. denied, Pennsylvania v. Williams*, 446 U.S. 912, 100 S.Ct. 1843, 64 L.Ed.2d 266 (1978).

Appellant's second claim is that the trial court erred in allowing the admission of evidence of other crimes committed by the appellant, Rice and Middleton. Specifically, appellant would have us find error in the admission of testimony regarding the armed robbery of William Gesin, prior to the fatal shooting; and also testimony regarding the robbery of Carrie Schilk, subsequent to the shooting. We decline to do so.

■ Our scope of review in this matter is whether the trial court abused its discretion in allowing the admission of the other crimes evidence. *Commonwealth v. Ulatoski*, 472 Pa. 53, 371 A.2d 186 (1977).

■ The general rule, of course, prohibits testimony regarding other criminal acts. However, the exceptions under which such testimony is admissible are well established. Included are those cases where the evidence is introduced to prove: (1) motive; (2) intent; (3) absence of mistake or accident; (4) a scheme, plan or design embracing the commission of two or more crimes so related to each other that

---

**3.** It is not clear from the evidence, but it is implied that the appellant rolled down his window before firing the fatal shot. This factor must also be considered in determining the existence of premeditation.

proof of one tends to prove the other; or (5) the identity of the person charged with the commission of the crime on trial. *Commonwealth v. Peterson,* 453 Pa. 187, 307 A.2d 264 (1973); *Commonwealth v. Booth,* 291 Pa.Super. 278, 435 A.2d 1220 (1981).

■ Additionally, the probative value of the evidence must exceed its prejudicial impact. *Commonwealth v. Ulatoski, supra; Commonwealth v. Hawkins,* 295 Pa.Super. 429, 441 A.2d 1308 (1982); *Commonwealth v. King,* 290 Pa.Super. 563, 434 A.2d 1294 (1981); *Commonwealth v. Hude,* 256 Pa.Super. 439, 390 A.2d 183 (1978).

■ After analyzing the appellant's claim under the above standard we conclude the trial court did not abuse its discretion in admitting the contested testimony.

The Commonwealth's testimony showed that the three actors herein formulated a plan to "rob drunks" while they were at the appellant's house. The armed robbery of William Gesin was but one manifestation of this preconceived plan. The attempted robbery of Linda Jane Miller was another. In both crimes, a similar method was utilized. The men were together in or around Rice's car. When a victim was spotted, one member of the group was selected to carry out the robbery. The same weapon was used. The crimes occurred within one hour of each other, and took place within a few miles of each other. In both crimes there was a possibility, because of the use of a deadly weapon, of the escalation into violence, including serious injury or death. The fact that only one of the crimes resulted in such an escalation is not a sufficient distinction between them as to preclude the application of the common scheme exception. Finally, the prejudice to the appellant engendered in the minds of the jurors because of the testimony of the Gesin robbery is not so great as to outweigh the probative value.

The testimony concerning the robbery of Carrie Schilk also shows that this robbery arose out of the plan formulated by the men while at the appellant's house. Again the

crime took place close in time and space to the slaying of Miller; and again the same weapon was used in both crimes. However, a stronger reason exists to allow the introduction of this evidence. In his omnibus pre-trial motion, the appellant filed notice of his intent to raise an alibi defense; *i.e.* that he left the company of Rice and Middleton at 1:30 A.M. and returned home. The testimony concerning the Schilk robbery rebuts this contention and helps to establish the *identity* of the appellant as one of the perpetrators of the Miller robbery and shooting. Rice testified as to the appellant's participation in the robbery of Schilk. This testimony is at least partially corroborated by the testimony of Carrie Schilk. Although she could not testify as to the exact identity of the appellant (because she was tied up and knocked unconscious by a blow to the head), she asserted that three men were involved in the robbery of the house.

Finally, we conclude that testimony concerning both the Gesin and Schilk robberies would be admissible under the intent or state of mind exception. These robberies took place in a short interval and within a relatively narrow spatial area. The testimony regarding these other crimes shows the appellant's state of mind both shortly before and shortly after the shooting of Linda Jane Miller. It is testimony relevant to the intent to rob Miller. Because the appellant was charged with criminal homicide generally, the testimony was relevant to proving the intent to rob Miller establishing the underlying felony necessary to the charge of murder in the second degree. *Commonwealth v. Murphy*, 493 Pa. 35, 425 A.2d 352 (1981).

Appellant's third claim is that the trial judge erred in ordering the consolidation of appellant's trial with the trial of co-defendant, Robert Middleton. The appellant specifically contends that his interest and the interest of Middleton were adverse in that the Commonwealth case against Middleton was based on a theory of felony murder necessitating proof of the underlying felony; *i.e.* the robbery of Miller. On the other hand, the Commonwealth's case against the appellant was based on a theory of first degree

murder. Thus, he contends that he was prejudiced by the introduction of evidence regarding the underlying felony which was not vital to the Commonwealth's case against him. This argument is specious.

In *Commonwealth v. Tolassi,* 489 Pa. 41, 413 A.2d 1003 (1980), the supreme court held that:

> The decision whether to sever cases against co-defendants is one within the sound discretion of the trial court. *Commonwealth v. Kloiber,* 378 Pa. 412, 106 A.2d 820 (1954), *cert. denied,* 348 U.S. 875, 75 S.Ct. 112, 99 L.Ed. 688 (1954); Pa.R.Crim.P. 219. Such a decision will be reviewed only where there has been a manifest abuse of discretion. *Commonwealth v. Lasch,* 464 Pa. 573, 347 A.2d 690 (1975) (opinion in support of affirmance); *Commonwealth v. Patrick,* 416 Pa. 437, 206 A.2d 295, (1965) appeal after remand 424 Pa. 380, 227 A.2d 849 (1967). And the critical factor in one analysis is the prejudice which inures to the accused as a result of the trial court's determination. *Commonwealth v. Peterson,* 453 Pa. 187, 194, 307 A.2d 264, 267 (1973); *Commonwealth v. Lasch, supra,* 464 Pa. at 584–85, 347 A.2d at 690.

Id. 489 Pa. at 49, 413 A.2d at 1007.

We find no abuse of discretion in the trial court's decision to consolidate the cases. Both defendants were charged generally with criminal homicide. Regardless of the Commonwealth's theory of prosecution, the evidence of the underlying felony was relevant to the charge against the appellant, who could have hypothetically been found guilty of second degree murder because of his participation as an accomplice in the robbery.

Moreover, there was a sound basis for the trial judge's decision to consolidate. The evidence presented against each of the defendants was virtually identical. To require the evidence to be presented in separate trials would be repetitive.

Finally, there is no conflict between the defenses presented by the respective defendants. The appellant herein raised an alibi defense whereas Middleton raised no defense

at all. These defenses are not antagonistic. Again we perceive no error.

Appellant's final claim is that the trial court erred in allowing a police officer to testify concerning boot prints found outside Carrie Schilk's house and how those prints matched a pair of boots later found in the appellant's residence. This claim has been waived by the failure to include it in written post-verdict motions as required by Pa.R.Crim.P. 1123.[4]

Accordingly, the judgment of sentence of the trial court is affirmed.

4. Even if the claim had not been waived, we would conclude that appellant is not entitled to a new trial. The police officer testified that he saw boot prints in the snow outside Schilk's house and made a sketch of the pattern of the print. He also testified that he seized a pair of boots from the home of the appellant. He began to testify on the comparison between the sketch and the seized boots when defense counsel objected. The objection was sustained and a curative instruction was given. We conclude that the trial court took action as quickly as it could considering the lateness of defense counsel's objection. Moreover, a curative instruction was given and the evidence was merely corroborative of the testimony of Rice. Any error committed was harmless error.