469 A.2d 1134

**COMMONWEALTH of Pennsylvania**

v.

**Rodney BAYLOR, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 23, 1983.

Filed Dec. 30, 1983.

Petition for Allowance of Appeal Denied May 8, 1984.

John M. Glace, Assistant Public Defender, Harrisburg, for appellant.

Katherene E. Holtzinger, Deputy District Attorney, Harrisburg, for Commonwealth, appellee.

Before WIEAND, CIRILLO and JOHNSON, JJ.

WIEAND, Judge:

Rodney Baylor was tried by jury and convicted of murder of the third degree [1] in connection with the shooting death of Arthur Green on June 13, 1981. On direct appeal following the denial of post verdict motions and the imposition of sentence, Baylor contends (1) that the evidence was insufficient to support his conviction; and (2) that his constitutionally protected right not to be placed twice in jeopardy for

---

1. 18 Pa.C.S. § 2502(c).

the same offense was violated when the trial court allowed the trial to continue after a juror, who had been selected and sworn following voir dire examination, was discharged for cause and replaced because she had changed her mind overnight and declared that she would be unable to consider the death penalty. There is no merit in these contentions; and, therefore, we affirm the judgment of sentence.

In reviewing the sufficiency of the evidence, we view the evidence, and all reasonable inferences to be drawn therefrom, in the light most favorable to the Commonwealth. The test is whether the evidence thus viewed is sufficient to prove guilt beyond a reasonable doubt. *Commonwealth v. Keblitis*, 500 Pa. 321, 322, 456 A.2d 149, 150 (1983); *Commonwealth v. Hartzell*, 320 Pa.Super. 249, 257, 467 A.2d 22, 26 (1983); *Commonwealth v. Ruffin*, 317 Pa.Super. 126, 129, 463 A.2d 1117, 1118–1119 (1983). Thus viewed, the evidence discloses that Baylor and Kevin Smith went to Arthur Green's house in the Allison Hill section of Harrisburg at or about 9:00 p.m. on June 13, 1981 for the purpose of buying cocaine. Smith departed empty-handed after a brief stay because he and Baylor did not have enough money to purchase the drugs. Baylor remained and thereafter pulled out a .22 caliber handgun and demanded money from Green. In the presence of Green's fiancee, Carolyn Wallace, Baylor shot Green through the left lung and heart as Green reached for the money in his shirt pocket. Green died later that evening at the Harrisburg Hospital. Baylor, who had fled the scene immediately after the shooting, was arrested the following day at his parents' home. A search of Baylor's dresser in his bedroom produced six .22 caliber bullets.

This evidence was sufficient to warrant a finding of murder in the third degree. The gravamen of third degree murder is a killing committed with malice. See: *Commonwealth v. Young*, 494 Pa. 224, 227, 431 A.2d 230, 232 (1981); *Commonwealth v. Pitts*, 486 Pa. 212, 219, 404 A.2d 1305, 1308 (1979); *Commonwealth v. Carter*, 481 Pa. 495, 498–499, 393 A.2d 13, 15 (1978); *Commonwealth v.*

*Wanamaker*, 298 Pa.Super. 283, 287, 444 A.2d 1176, 1178 (1982). Malice may be proven by circumstantial evidence, including the accused's utilization of a deadly weapon to inflict a wound to a vital organ. *Commonwealth v. D'Ambro*, 500 Pa. 303, 308 n. 5, 456 A.2d 140, 143 n. 5 (1983); *Commonwealth v. Martinez*, 499 Pa. 417, 423, 453 A.2d 940, 944 (1982); *Commonwealth v. Roberts*, 496 Pa. 428, 435, 437 A.2d 948, 951–952 (1981); *Commonwealth v. Horton*, 485 Pa. 115, 118, 401 A.2d 320, 322 (1979); *Commonwealth v. Cartagena*, 272 Pa.Super. 485, 490, 416 A.2d 560, 563 (1979); *Commonwealth v. Kennerly*, 269 Pa.Super. 404, 407, 410 A.2d 319, 321 (1979). The fact that Baylor was a drug addict and may have been ill because of withdrawal did not preclude a finding of malice. See: *Commonwealth v. Coleman*, 482 Pa. 581, 585–586, 394 A.2d 474, 476–477 (1978) (plurality opinion). Cf. *Commonwealth v. Milburn*, 488 Pa. 601, 603, 413 A.2d 388, 388 (1980); *Commonwealth v. Hicks*, 483 Pa. 305, 312, 396 A.2d 1183, 1186 (1979); *Commonwealth v. Ruff*, 266 Pa.Super. 497, 498–499, 405 A.2d 929, 929–930 (1979); 18 Pa.C.S. § 308. See generally: *Commonwealth v. Fairell*, 476 Pa. 128, 133–134, 381 A.2d 1258, 1260–1261 (1977) (issue of defendant's "intoxication" on narcotics in first degree murder prosecution, as it relates to ability to form specific intent to kill, is for resolution by the jury). Accord: *Commonwealth v. Padgett*, 465 Pa. 1, 348 A.2d 87 (1975); *Commonwealth v. Fostar*, 455 Pa. 216, 317 A.2d 188 (1974).

■ Moreover, inconsistencies in the testimony of Carolyn Wallace, the victim's fiancee, were for resolution by the jury and did not render the evidence insufficient to convict. See: *Commonwealth v. Galloway*, 495 Pa. 535, 539, 434 A.2d 1220, 1222 (1981); *Commonwealth v. Hartzell, supra* 320 Pa.Super. at 257, 467 A.2d at 26; *Commonwealth v. Curry*, 318 Pa.Super. 490, 495, 465 A.2d 660, 662 (1983); *Commonwealth v. Boettcher*, 313 Pa.Super. 194, 200, 459 A.2d 806, 808 (1983). The jury was free to believe all, some or none of her testimony. It was also free to believe all, some or none of Baylor's tendered explanation that the gun

had discharged accidentally. See: *Commonwealth v. Shaver*, 501 Pa. 167, 173, 460 A.2d 742, 745 (1983); *Commonwealth v. Guest*, 500 Pa. 393, 396, 456 A.2d 1345, 1347 (1983); *Commonwealth v. Ruffin*, 317 Pa.Super. 126, 134, 463 A.2d 1117, 1120 (1983); *Commonwealth v. Newman*, 310 Pa.Super. 493, 496, 456 A.2d 1044, 1045 (1983).

Voir dire examination of potential jurors for Baylor's trial commenced on October 19, 1981. Consistent with Pa.R. Crim.P. 1106(b) and (e), each venireman was examined individually, selected and immediately sworn.[2] The sixth juror selected and sworn that day, Cynthia G. Hyler, stated in response to examination by the assistant district attorney that in an appropriate case, she would be able to return a verdict favoring the death penalty. Upon further reflection that evening, however, Mrs. Hyler decided that she could not consider the death penalty under any circumstances. A record colloquy on the following day disclosed that Mrs. Hyler had become unable to follow the law and consider the death penalty even if, under the law, a jury were to be required to consider imposing such a sentence. Over Baylor's objection, the juror was excused for cause. On appeal, Baylor contends that jeopardy had attached when Mrs. Hyler was sworn as the sixth juror and that replacing her with another juror put him twice in jeopardy. We disagree.

■ "The prohibition of double jeopardy, as it relates to subsequent prosecutions, is irrelevant until jeopardy has once attached." *Commonwealth v. Arelt*, 308 Pa.Super. 236, 241, 454 A.2d 108, 111 (1982), citing *Commonwealth v. Potosnak*, 289 Pa.Super. 115, 123, 432 A.2d 1078, 1082 (1981). In jury proceedings, jeopardy attaches when a panel of jurors is selected and sworn. *Crist v. Bretz*, 437 U.S. 28, 35, 98 S.Ct. 2156, 2161, 57 L.Ed.2d 24, 27 (1978); *United States v. Martin Linen Supply Co.*, 430 U.S. 564,

2. Rule 1106(e) requires that in capital cases, the court must use the individual voir dire method when potential jurors are examined. Rule 1106(b) gives the trial court discretion in deciding whether to administer the requisite oath individually or collectively. See generally: *Commonwealth v. Pittman*, 320 Pa.Super. 166, 466 A.2d 1370 (1983).

569, 97 S.Ct. 1349, 1353, 51 L.Ed.2d 642, 650 (1977); *Serfass v. United States,* 420 U.S. 377, 388, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265, 274 (1975); *Klobuchir v. Commonwealth of Pennsylvania,* 639 F.2d 966, 970 (3rd Cir.1981), *cert. denied,* 454 U.S. 1031, 102 S.Ct. 566, 70 L.Ed.2d 474 (1981); *Commonwealth v. Klobuchir,* 486 Pa. 241, 249, 405 A.2d 881, 885 (1979) (Opinion in support of affirmance by Nix, J., with two Justices concurring), *cert. denied,* 445 U.S. 952, 100 S.Ct. 1602, 63 L.Ed.2d 787 (1980); · *Commonwealth v. Carson,* 259 Pa.Super. 183, 191–192, 393 A.2d 778, 781 (1978); *Commonwealth v. Smith,* 232 Pa.Super. 546, 548, 334 A.2d 741, 742 (1975). Jeopardy is deemed to attach when a jury is sworn in order to protect the accused's right to have his trial by a particular tribunal once that tribunal has been chosen. *Crist v. Bretz, supra* 437 U.S. at 35–36, 98 S.Ct. at 2161, 57 L.Ed.2d at 31–32, quoting *Wade v. Hunter,* 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed.2d 974 (1949). See: *Arizona v. Washington,* 434 U.S. 497, 503, 98 S.Ct. 824, 829, 54 L.Ed.2d 717, 727 (1978); *United States .v. Sanders,* 591 F.2d 1293, 1296 (9th Cir.1979); *Mizell v. Attorney General of the State of New York,* 586 F.2d 942, 945 (2nd Cir.1978), *cert. denied,* 440 U.S. 967, 99 S.Ct. 1519, 59 L.Ed.2d 783 (1979); *United States v. Bobo,* 586 F.2d 355, 362 (5th Cir.1978), *cert. denied, sub nom. Rowan v. United States,* 440 U.S. 976, 99 S.Ct. 1546, 59 L.Ed.2d 795 (1979).

■ In the instant case, jeopardy had not attached when the juror was excused. The reason has been stated as follows:

The trial begins when the jury is charged with the defendant, and that is at the moment a full jury is impanneled [sic] and sworn; he is not in jeopardy before. Up to that point the Court may postpone the trial as lawfully at one stage of the proceedings as another. A man is not in peril from the verdict of a jury· till the full number are qualified to hearken unto the evidence and make deliverance. Eleven jurors, or eight, can give no verdict.... The practice as to the time of administering the oath to the jurors is not uniform; in some districts each juror is

separately sworn as called and unchallenged, and in others none are sworn until all are selected. In either case the tribunal is unorganized while there are less than twelve, and until it is organized, for good cause the Court may direct the drawing of the jurors to begin anew.

*Alexander v. Commonwealth*, 105 Pa. 1, 9 (1884), citing *McFadden v. Commonwealth*, 23 Pa. 12, 15–16 (1853). See also: *Commonwealth v. Almeida*, 362 Pa. 596, 636–637, 68 A.2d 595, 615–616 (1949), *cert. denied*, 339 U.S. 924, 70 S.Ct. 614, 94 L.Ed. 1346 (1950), *disapproved on other grounds*, *Commonwealth v. Redline*, 391 Pa. 486, 137 A.2d 472 (1958) as stated in *Commonwealth v. Allen*, 475 Pa. 165, 379 A.2d 1335 (1977); *Commonwealth v. Curry*, 287 Pa. 553, 556–557, 135 A. 316, 317 (1926). "Jeopardy is the peril in which a defendant is put when he is regularly charged with a crime before a tribunal *properly organized and competent to try him.*" *Commonwealth v. Fitzpatrick*, 121 Pa. 109, 116, 15 A. 466, 467 (1888), *overruled on other grounds*, *Commonwealth v. Simpson*, 310 Pa. 380, 165 A. 498 (1933) (emphasis added). "A jury does not come into being until it is *completely* selected and sworn." *Commonwealth v. Almeida, supra* 362 Pa. at 638, 68 A.2d at 616. See: *Commonwealth ex rel. Fletcher v. Cavell*, 395 Pa. 134, 149, 149 A.2d 434, 442 (1959) (Dissenting Opinion by Musmanno, J.), *cert. denied*, 361 U.S. 847, 80 S.Ct. 102, 4 L.Ed.2d 85 (1959).

Mrs. Hyler was only the sixth juror sworn; when the court excused and replaced her, the jury was still incomplete and incapable of rendering a verdict. Thus, jeopardy had not attached.[3]

Judgment of sentence affirmed.

---

**3.** The rule that a juror may be replaced prior to the swearing of a full panel without violating double jeopardy considerations is consistent with Pa.R.Crim.P. 1106(e)(1)(B), which provides in pertinent part: "Without declaring a mistrial, a judge may allow a challenge for cause at any time before the jury begins to deliberate, provided sufficient alternates have been selected, or the defendant consents to be tried by a jury of less than twelve, pursuant to Rule 1103."