578 A.2d 933

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Keith Michael SCOTT.**

**COMMONWEALTH of Pennsylvania**

v.

**Keith Michael SCOTT, Appellant.**

Superior Court of Pennsylvania.

Argued March 20, 1990.

Filed July 19, 1990.

Reargument Denied Aug. 28, 1990.

Gregory Doyle Anthony, Asst. Dist. Atty., Warren, for Com. (at 2333).

George W. Westervelt, Jr., Stroudsburg, for appellant (at 2408) and appellee (at 2333).

David E. Christine, Jr., Dist. Atty., East Stroudsburg, for Com. (at 2408).

Before OLSZEWSKI, JOHNSON and HOFFMAN, JJ.

HOFFMAN, Judge:

A criminal complaint was filed in Monroe County charging defendant Keith Scott with criminal homicide, robbery, aggravated assault (two counts), theft, and attempted criminal homicide. These cross-appeals are from the order below that, *inter alia*, dismissed the first degree murder and attempted criminal homicide charges against Scott, and set a trial date for the remaining charges. In its appeal, the Commonwealth construes the court's order as having granted Scott habeas corpus relief, and contends that the court erred because a *prima facie* case was established on all charges. Conversely, Scott, in his cross-appeal, construes the court's order as one under the Mental Health Procedures Act, *see* 50 Pa.Stat.Ann. §§ 7101–7503, and argues that the court erred in failing to enter an acquittal on all charges. For the reasons that follow, we quash Scott's appeal but otherwise affirm the order below.

The criminal complaint in this case was filed on April 1, 1983. The complaint alleged that on March 31, 1983, Scott stabbed one man to death and seriously wounded another. On May 11, 1983, a preliminary hearing was held, and Scott was bound over on the charges. Thereafter, Scott's counsel filed a petition under the Mental Health Procedures Act for a hearing to determine competence, *see* 50 Pa.Stat.Ann.

§ 7403. Scott was arraigned on May 31, and a plea of not guilty was entered on his behalf. On June 1, the hearing court issued an opinion and order, finding Scott incompetent to stand trial, and committing him to Farview State Hospital for ninety (90) days. A defense motion for continuance of trial was granted on September 8, 1983. On November 9, the court granted Scott's motion to continue trial indefinitely, stating in its order that "Defendant shall be tried only when the Commonwealth has received notice from Farview State Hospital ... that the Defendant is mentally competent to stand trial." Between 1983 and 1989, the court received periodic reports concerning Scott's competency, which resulted in the entry of orders continuing his treatment at Farview.

In April and May of 1989, the Commonwealth filed applications for three separate competency examinations under § 7402(d) of the Act.[1] In the applications, the Commonwealth sought to have Scott's condition reviewed by Bernard Willis, M.D., and Kenneth Weiss, M.D., both psychiatrists, and Gerry A. Stefanatos, Ph.D., a neuropsychologist. The court issued separate orders granting each application, and directing that Scott be examined by the doctors designated by the Commonwealth. The orders also directed the doctors to file reports detailing, *inter alia*, their respective opinions concerning (1) Scott's competence to stand trial; (2) whether, at the time of the offenses, Scott was legally insane;[2] and (3) whether Scott had the mental capacity to

1. Section 7402(d) provides that a court, on application or on its own motion, may order a competency examination at any stage in the proceedings. *Id.*

2. In this regard, the court's orders mirrored the language of § 315(b) of the Crimes Code. According to § 315(b),

 the phrase "legally insane" means that, at the time of the commission of the offense, the actor was laboring under such a defect of reason, from disease of the mind, as not to know the nature and quality of the act he was doing or, if the actor did know the quality of the act, that he did not know that what he was doing was wrong. *Id.* This definition is a virtually verbatim enactment of the common law *M'Naghten* rule. *Compare, e.g., Commonwealth v. Roberts,* 496 Pa. 428, 434, 437 A.2d 948, 951 (1981) (quoting *Commonwealth v.*

form a specific intent to kill.[3] On July 5, 1989, the court scheduled a competency hearing for July 14. On July 11, however, Scott filed a notice of insanity defense, *see* Pa.R. Crim.P. 305, and a petition for a writ of habeas corpus. In the habeas petition, Scott alleged that the reports already filed by the Commonwealth's own experts were sufficient to establish his insanity. In response, the court rescheduled the competency hearing for July 24, 1989, and directed that evidence on the habeas petition would be heard at the same time.

At the July 24 hearing, the court heard testimony from the Commonwealth's three medical experts.[4] Doctors Willis, Weiss, and Stefanatos all opined that Scott was competent to stand trial. Scott's counsel also questioned Doctors Willis and Weiss in an attempt to prove that Scott was legally insane.[5] Both psychiatrists stated that their examinations led them to conclude that Scott had been legally insane at the time of the offenses. *See* N.T. July 24, 1989 at 7, 23–24 (R.R. at 51a, 67a–68a). The doctors' testimony in this regard was consistent with the findings contained in the reports they had filed with the court. *See* R.R. at 151a–52a (Dr. Willis),[6] 153a–54a (Dr. Weiss). In an attempt to rebut the doctors' conclusions on insanity, the Commonwealth introduced the testimony of Christine Metzler, Scott's girlfriend at the time of the offenses. Ms. Metzler testified concerning Scott's behavior shortly after the stabbings occurred. Her testimony suggested that Scott was

*Woodhouse,* 401 Pa. 242, 249–50, 164 A.2d 98, 103 (1960); *Regina v. M'Naghten,* 10 Cl. & Fin. 200, 8 Eng.Rep. 718 (1843)).

**3.** The Mental Health Procedures Act specifically authorizes the court to direct inquiry into these areas. *See* 50 Pa.Stat.Ann. § 7402(e)(4)(ii)–(iv).

**4.** The doctors' reports had been filed before the hearing.

**5.** Under the Crimes Code, the defendant has the burden of establishing legal insanity by a preponderance of the evidence. *See* 18 Pa.C. S.A. § 315(a).

**6.** In his report, Doctor Willis also stated "I do not believe that Mr. Scott had the mental capacity to have specific intent to kill another human being." This opinion is relevant to the question of diminished capacity.

aware that he had killed someone, that he knew it was wrong to do so, and that he was aware enough of the wrongfulness of his actions to attempt to destroy evidence, disguise his appearance, and flee. *See* N.T. July 24, 1989, at 44–49 (R.R. at 88a–93a). Finally, the Commonwealth introduced the notes of testimony from Scott's preliminary hearing.

After hearing argument, the court directed the parties to file briefs. A review of these briefs [7] indicates that, although appellant had raised the insanity issue in a habeas petition, both parties recognized that the court had the authority, under the Mental Health Procedures Act, *see* 50 Pa.Stat.Ann. § 7404(a),[8] to make a pre-trial determination concerning Scott's criminal responsibility. *See* "Commonwealth's Brief in Opposition to Defendant's Application for Habeas Corpus Relief Under the Mental Health Procedures Act" at 2–3; "Defendant's Brief in Support of Petition for Writ of Habeas Corpus" at 3–5. On September 1, 1989, the hearing court issued an order in which, *inter alia*, it found that Scott was competent to stand trial,[9] dismissed the charges of first degree murder and attempted criminal homicide, and denied Scott's petition for a writ of habeas corpus. The Commonwealth and Scott filed these timely cross-appeals from that order.

In its opinion accompanying the September 1 order, the court explained the reasons for its disposition as follows. The court noted that the Commonwealth's psychiatrists agreed that appellant was legally insane at the time of the offense.[10] The court also noted, however, that the experts

7. The briefs are included in the certified record on appeal.

8. Section 7404(a) provides in relevant part that, when a court conducts a hearing on competence (pursuant to § 7403), "the court may, in its discretion, also hear evidence on whether the person was criminally responsible for the commission of the crime charged." *Id.* If the court finds the person "to have lacked criminal responsibility, an acquittal shall be entered." *Id.*

9. Scott does not dispute the competency determination.

10. The court characterized the psychiatric testimony as follows:
Psychiatrist Willis' opinion is that at the time of the offense, the Defendant "lacked substantial capacity either to appreciate the

agreed that Scott's mental incapacity resulted, in some part at least, from his "long time drug use." *See* Trial Court Opinion at 8. This finding is important because the Crimes Code specifically provides that "neither voluntary intoxication nor voluntary drugged condition is a defense to a criminal charge, nor may evidence of such conditions be introduced to negative the element of intent of the offense...." 18 Pa.C.S.A. § 308. Instead, evidence of such a condition may be offered only "whenever it is relevant to reduce murder from a higher degree to a lower degree of murder." *Id.* In light of these limitations, the court reasoned that:

> Our Supreme Court has held that an actor should not be insulated from criminal liability for acts which result from a mental state that is voluntarily self-induced. *See Commonwealth v. Hicks,* 483 Pa. 305, 311, 396 A.2d 1183, 1186 (1979). However, our Supreme Court has never reached the question[ ] of the applicability of the defense of insanity where the mental disease is traceable to long term abuse of drugs. In the *Hicks* case, supra, the Court was concerned with an acute episode. *Commonwealth v. Hicks,* 483 Pa. 305, 311 n. 5, 396 A.2d 1183, 1186 n. 5 (1979).

> We reject the proposition that in today's society a mental illness resulting from long term drug abuse can exonerate someone from criminal responsibility. On the

wrongfulness of his alleged conduct or to conform his conduct to the requirements of the law and was operating under such defect of reason from disease of the mind as not to know the nature and quality of the act he was doing. I do not believe Mr. Scott had the mental capacity to have specific intent to kill another human being." Psychiatrist Weiss testified that the Defendant "Because of his mental disease at the time of the offense, he [sic] lacked substantial capacity to appreciate the wrongfulness of his behavior and to conform his conduct to the requirements of the law. Because of his mental disease at the time of the offense, he was laboring under a defect of reason, such that, although he may have known the nature and quality of his acts, he did not know that what he was doing was wrong."
Trial Court Opinion at 6–7.

other hand, we find it unconscionable to submit the issue of First Degree Murder in this case to the jury where all of the experts hired by the Commonwealth unequivocally agree that the defendant did not have the mental capacity to form a specific intent to kill. Such specific intent is a requisite for the capital offense of first degree murder. 18 Pa.C.S.A. [§] 2502.

Since we find that the Defendant lacked the specific intent to commit first degree murder, this conclusion also mandates that the charge of Criminal Attempt to Commit Criminal Homicide be dismissed.

Trial Court Opinion at 20–21.

Both Scott and the Commonwealth take issue with the court's decision below. The parties' arguments are based on differing characterizations of the nature of the hearing below. The Commonwealth suggests that the court was sitting as a habeas corpus court, and thus had power only to determine whether the Commonwealth had presented a *prima facie* case. The Commonwealth then argues that the evidence it presented clearly was sufficient to establish a *prima facie* case and notes that Scott does not contest this fact. Scott suggests, however, that the court was sitting under authority of the Mental Health Procedures Act and was empowered, in its discretion, to make a pre-trial determination of Scott's criminal responsibility. Scott contends that the court erred to the extent that it refused to acquit him on *all* charges on insanity grounds.[11] Because our review of the propriety of the court's decision depends preliminarily on a determination whether the court was sitting as a habeas court or under the Mental Health Procedures Act, we shall first review the court's authority, and then discuss the merits of the claims.

11. Scott's argument in this regard focuses on his disagreement with what he perceives to be the court's finding that his mental disease resulted from *voluntary* intoxication.

## I. PROCEDURES GOVERNING PRE–TRIAL CHALLENGES TO SUFFICIENCY AND CRIMINAL RESPONSIBILITY

### A. Habeas Corpus

The Judicial Code, 42 Pa.C.S.A. § 101 *et seq.*, provides that "[a]ny judge of a court of record may issue the writ of habeas corpus to inquire into the cause of detention of any person or for any other lawful purpose." *Id.* § 6502(a). It is settled that a petition for a writ of habeas corpus is the proper means for testing a pre-trial finding that the Commonwealth has sufficient evidence to establish a *prima facie* case. *Commonwealth v. Morman,* 373 Pa.Super. 360, 363, 541 A.2d 356, 357 (1988); *see also Commonwealth v. Hetherington,* 460 Pa. 17, 331 A.2d 205 (1975). A pre-trial petition for a writ of habeas corpus, therefore, is similar in purpose to a preliminary hearing. *See Commonwealth v. Morman, supra,* 373 Pa.Super. at 365, 541 A.2d at 359. " 'The primary reason for the preliminary hearing is to protect an individual's right against unlawful arrest and detention. It seeks to prevent a person from being imprisoned or required to enter bail for a crime which was never committed, or for a crime with which there is no evidence of his connection.…' " *Id.* (citations omitted). Thus, the focus of a pre-trial habeas petition is on "whether sufficient Commonwealth evidence exists to require a defendant to be held in government 'custody' until he may be brought to trial." *Id.,* 373 Pa.Superior Ct. at 367, 541 A.2d at 360. In making this pre-trial determination, the habeas court is not limited to reviewing the evidence presented at the preliminary hearing; instead, "the Commonwealth may present additional evidence at the habeas corpus stage in its effort to establish at least *prima facie* that a crime has been committed and that the accused is the person who committed it." *Id.,* 373 Pa.Superior Ct. at 365–66, 541 A.2d at 359.

### B. Mental Health Procedures Act

The Mental Health Procedures Act provides a vehicle by which a trial court, in its discretion, may make a pre-trial

determination of a defendant's criminal responsibility. *See Commonwealth v. Gainor*, 289 Pa.Super. 190, 195, 432 A.2d 1116, 1119 (1981). *See generally* J.W. Oler, *Pennsylvania Criminal Law: Defendant's Mental State* §§ 5.9—5.12 (1986). Such a determination may be made only in conjunction with a pre-trial competency examination and hearing. The Act is structured as follows. Section 7402 provides that an application for an incompetency examination "may be presented by an attorney for the Commonwealth, a person charged with a crime, his counsel, or the warden or other official in charge of the institution" where the person is detained. *Id.* § 7402(c). The court, after such application or on its own motion, "may order an incompetency examination at any stage in the proceedings and may do so without a hearing unless the examination is objected to by the person charged with a crime or by his counsel." *Id.* § 7402(d). Section 7402(e) provides that, when the court directs an incompetency examination, it may also direct an inquiry into the defendant's criminal responsibility:

(e) **Conduct of Examination; Report.**—When ordered by the court, an incompetency examination shall take place under the following conditions:

\* \* \* \* \* \*

(2) It shall be conducted by at least one psychiatrist *and may relate both to competency to proceed and to criminal responsibility for the crime charged.*

\* \* \* \* \* \*

(4) A report shall be submitted to the court and to counsel and shall contain a description of the examination, which shall include:

(i) diagnosis of the person's mental condition;

(ii) an opinion as to his capacity to understand the nature and object of the criminal proceedings against him and to assist in his defense;

(iii) *when so requested, an opinion as to his mental condition in relation to the standards for criminal responsibility as then provided by law if it appears that the facts concerning his mental condition may*

> *also be relevant to the question of legal responsibility;* and
>
> (iv) *when so requested, an opinion as to whether he had the capacity to have a particular state of mind, where such state of mind is a required element of the criminal charge.*

*Id.* (emphasis supplied). The Act further provides that, when a court conducts a subsequent *hearing* on incompetency, *see id.* § 7403, the court "may, in its discretion, also hear evidence on whether the person was criminally responsible · for the commission of the crime charged." *Id.* § 7404(a). This pre-trial determination of responsibility is to be made by the court "in accordance with the rules governing the consideration and determination of the same issue at criminal trial." *Id.*[12] If the court finds the defendant "to have lacked criminal responsibility, an acquittal shall be entered." *Id.*[13] If the defendant is not acquitted, the defense still may be raised at the subsequent trial. *Id.*

In summary, it is clear that, in the pre-trial setting, the Mental Health Procedures Act and habeas corpus play very different roles. A habeas corpus inquiry is limited to a *prima facie* evaluation of the *sufficiency* of the Commonwealth's case, and the court sits, in effect, in a review capacity. Conversely, the Mental Health Procedures Act authorizes a trial court to make a broad inquiry into a

---

**12.** The Act also provides a procedure by which the court can separate the question of responsibility from other issues in the case:

> **(c) Bifurcation of Issues or Trial.**—Upon trial, the court, in the interest of justice, may direct that the issue of criminal responsibility be heard and determined separately from the other issues in the case and, in a trial by jury, that the issue of criminal responsibility be submitted to a separate jury. Upon a request for bifurcation, the court shall consider the substantiality of the defense of lack of responsibility and its effect upon other defenses, and the probability of· a fair trial.

*Id.* § 7404(c).

**13.** An acquittal does not necessarily mean that the defendant will go free. Section 7406 provides that "the attorney for the Commonwealth, on his own or acting at the direction of the court, the defendant, his counsel, the county administrator, or any other interested party may petition the same court for an order directing involuntary treatment. . . ." *Id.*

defendant's criminal responsibility, and to make a pretrial *factual* determination concerning a defendant's criminal responsibility.

## II. THE COMMONWEALTH'S APPEAL

### —A—

 The Commonwealth's entire argument is premised upon its characterization of the order below as granting habeas corpus relief. If the Commonwealth is correct that the court was sitting only as a habeas court, there is no question that we would have to sustain the Commonwealth's position. It is settled that the trier of fact is not required to accept psychiatric testimony on the question of a defendant's sanity, *see, e.g., Commonwealth v. Tempest,* 496 Pa. 436, 441, 437 A.2d 952, 954 (1981), or the question of a defendant's mental capacity to form a specific intent to kill. *See id.,* 496 Pa. at 441, 437 A.2d at 955; *Commonwealth v. Davis,* 331 Pa.Super. 59, 65, 479 A.2d 1077, 1080 (1984). Instead, the defendant's criminal responsibility can be established by his own conduct and statements at or near the time of the offense, or by the testimony of lay witnesses. *Id.,* 496 Pa. at 440, 437 A.2d at 954. Here, the Commonwealth introduced the preliminary hearing testimony of the surviving victim, Keith Knecht, as well as the testimony of Scott's girlfriend, Christine Metzler, at the July 24, 1989 hearing. This evidence clearly was sufficient, as a *prima facie* matter, to rebut Scott's insanity defense.[14]

---

**14.** Specifically, Knecht's testimony suggested that Scott purposefully committed the criminal acts in a secluded spot, and purposefully fled from the scene when a car approached. *See* N.T. May 11, 1983, at 10–11, 16 (R.R. at 119a–20a, 125a). Christine Metzler's testimony suggested that Scott was aware that he killed someone, and that it was wrong to do so. *See* N.T. July 24, 1989, at 44 (R.R. at 88a). Her testimony also suggested that Scott was aware enough of the wrongfulness of his actions to attempt to destroy evidence, disguise his appearance, and flee. *Id.* at 45–49 (R.R. at 89a–93a).

We should note that it is unclear whether pre-trial habeas corpus relief should *ever* be available upon a claim of legal insanity or diminished capacity. The Crimes Code places the burden upon the *defendant* to establish insanity by a preponderance of the evidence. 18 Pa.C.S.A. § 315(a). Because the defendant has this affirmative

■ The difficulty with the Commonwealth's position is that a review of the record and the court's opinion indicates that the court did *not* grant relief on habeas corpus grounds. It is true that the question of Scott's sanity was first raised in a habeas petition. However, that petition was filed while the court already was in the process of conducting an incompetency examination under the Mental Health Procedures Act. The court and the parties recognized that the Act authorized the court to make a pre-trial determination concerning Scott's criminal responsibility.[15] The court in fact did direct the doctors to present opinions on *both* Scott's competency and his criminal responsibility. In addition, at the July 14 hearing, the court entertained psychiatric testimony on both competency and criminal responsibility, and the parties' briefs were devoted to the question of criminal responsibility. Thus, the question of Scott's responsibility was squarely before the court.

The court's order and opinion confirm that its disposition was not under habeas corpus. Although the court at one point cited to habeas corpus standards, its analysis did not proceed in terms of the sufficiency of the Commonwealth's *prima facie* case, but instead focused on the evidence regarding insanity and mental capacity, and the interrelationship between the Mental Health Procedures Act and the Crimes Code provisions concerning criminal responsibility. Moreover, the court's *conclusions*—i.e., that Scott was not

> burden, it is difficult to imagine how a claim of insanity would lead to a ruling, as a matter of law, that the Commonwealth failed to establish a *prima facie* case. Similarly, it would be inappropriate to grant pre-trial habeas corpus relief based on a diminished capacity claim because the defense of diminished capacity is said to *concede* general criminal liability. *See, e.g., Commonwealth v. Walzack,* 468 Pa. 210, 221, 360 A.2d 914, 920 (1976).

**15.** The Commonwealth concedes this point in its brief: "Although not specifically mentioned in the Petition for Writ of Habeas Corpus by the defendant, the Court, *properly,* presumed the defendant to be invoking the protections of 50 Pa.C.S.A. § 7404 *which, unlike habeas corpus relief, allows a pretrial acquittal on the basis of insanity.*" Brief for Appellant at 15 (emphasis supplied). Despite this concession, the Commonwealth addresses only the habeas corpus question, and makes no argument concerning the propriety of the court's decision under the Act.

entitled to habeas corpus relief and could not be "exoner-ate[d] from criminal responsibility," but still did not have the mental capacity to form a specific intent—indicates that the determination clearly was made pursuant to the Act.[16] Accordingly, the Commonwealth's argument that the court's decision was erroneous because it was an improper exercise of the court's habeas corpus power is meritless. The question that should arise at this point is whether the court's determination is supportable under the Act. The Commonwealth, however, has made no argument in this regard;[17] therefore, there is no basis for us to disturb the court's decision to dismiss the charges of first degree murder and attempted criminal homicide.

—B—

We should emphasize that our finding that the Commonwealth has failed to demonstrate error should not be construed as an opinion on the merits of the determination below. The questions presented to the court below were of a complex nature, involving the interplay of the Act and principles of criminal responsibility found both in the Crimes Code and the common law, and, as a result, it appears that the parties may not have appreciated the precise nature of the court's finding. In its opinion, the court clearly indicated that it refused to find Scott insane under the *M'Naghten* rule because his mental disease was traceable to "the habitual long term abuse of drugs." *See*

16. As we have noted above, the Act authorizes the court to direct an incompetency examination to include "an opinion as to whether [the defendant] had the capacity to have a particular state of mind, where such state of mind is a required element of the criminal charge." 50 Pa.Stat.Ann. § 7402(e)(4)(iv). This section is an apparent reference to a "diminished capacity" defense. *Cf. Commonwealth v. Walzack,* 468 Pa. 210, 360 A.2d 914 (1976).

17. The nearest the Commonwealth comes to making *any* argument concerning the Mental Health Procedures Act is the suggestion in its brief that "[t]he court appears to base its decision on a reluctance to acquit the defendant based solely on expert testimony, *which is within its power* [under the Act], and on a misplaced moral indignation over the fact that the Commonwealth would file a Notice of Aggravating Circumstances in Support of the Death Penalty...." Brief of Appellant at 18 (emphasis supplied).

Trial Court Opinion at 20. Instead, the *specific* reason the court dismissed the first degree murder and attempted criminal homicide charges was its finding that appellant lacked the mental capacity to form a specific intent to kill. *See id.* at 21. Although the court does not state it as such, this conclusion, which speaks in terms of the "defendant's capacity to form a specific intent to kill", was tantamount to a finding of diminished capacity. *See, e.g., Commonwealth v. Walzack,* 468 Pa. at 218, 220–21, 360 A.2d at 918, 919–20 ("diminished capacity" defense recognized for first time: *held,* defendant may introduce psychiatric evidence in attempt to show that he does not possess sufficient mental capacity to form specific intent to kill necessary to support first degree murder conviction). Despite this finding, the Commonwealth and Scott limit their discussions to habeas corpus and the *M'Naghten* insanity defense, respectively. If the parties had recognized that the court's decision was based on "diminished capacity", rather than on habeas corpus or a finding of legal insanity, different considerations may well have governed this appeal.[18]

**18.** As a general matter, a finding of diminished capacity provides much more limited relief than a finding of legal insanity. *Cf. Commonwealth v. Zettlemoyer,* 500 Pa. 16, 28, 454 A.2d 937, 943 (1982), *cert. denied sub nom. Zettlemoyer v. Pennsylvania,* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983). Diminished capacity, if established, operates only to negate premeditation and thereby reduce a first degree murder charge to a lesser degree of murder. *See Commonwealth v. Terry,* 513 Pa. 381, 390, 393, 521 A.2d 398, 402–03, 404 (1987), *cert. denied sub nom. Terry v. Pennsylvania,* 482 U.S. 920, 107 S.Ct. 3198, 96 L.Ed.2d 685 (1987). The limited nature of the defense was stressed in *Commonwealth v. Weinstein,* 499 Pa. 106, 451 A.2d 1344 (1982), where the Court stated:

> *Walzack* stands for the proposition that psychiatric testimony relevant to the cognitive functions of deliberation and premeditation is competent on the issue of specific intent to kill. Thus psychiatric testimony is competent in Pennsylvania on the issue of specific intent to kill if it speaks to mental disorders affecting the cognitive functions necessary to formulate a specific intent.

*Id.,* 499 Pa. at 114, 451 A.2d at 1347; *see also Commonwealth v. Terry, supra; Commonwealth v. Zettlemoyer, supra.*

Legal insanity (i.e., *M'Naghten* insanity), on the other hand, may be a defense to any "charged offense." 18 Pa.C.S.A. § 315(a). We should note, however, that, under the Crimes Code, if an actor's legal insanity results from *voluntary intoxication,* the insanity defense has the same ultimate effect as a finding of diminished capacity, *i.e.,* evidence of

## III. DEFENDANT SCOTT'S APPEAL

Defendant Scott contends that the court's order was erroneous to the extent that the court refused to enter an acquittal on *all* charges. Scott apparently suggests that the testimony of the Commonwealth's own psychiatrists requires a finding that he was legally insane. For the reasons that follow, we must quash Scott's appeal.

■ In his notice of appeal, Scott states only that the appeal is from "the order entered in this matter on the first day of September, 1989." Scott was aggrieved by that

such a condition may be offered only "whenever it is relevant to reduce murder from a higher degree to a lower degree of murder." *Id.* § 308.

In light of the limited nature of the diminished capacity defense, it is questionable whether the court's authority to determine "criminal responsibility" under § 7404(a) of the Act includes the power to make a finding of diminished capacity. *Cf. Commonwealth v. Walzack, supra,* 468 Pa. at 213–14, 360 A.2d at 916 ("today's decision *in no way affects the vitality of the M'Naghten test as the sole standard in this Commonwealth for determining criminal responsibility where the actor alleges mental illness or defect.*") (footnote omitted) (emphasis supplied). *Accord Commonwealth v. Weinstein, supra,* 499 Pa. at 115, 451 A.2d at 1348.

A second potential difficulty involves the dismissal of the charge of attempted criminal homicide. Our Supreme Court has indicated that the diminished capacity defense operates only to negate the specific intent required for first degree murder, and is not available for other specific intent crimes. *See, e.g., Commonwealth v. Terry,* 513 Pa. at 393, 521 A.2d at 404; *see also id.* at 394, 521 A.2d at 404 (diminished capacity only relevant if "the mental illness involved affects cognitive functions to an extent which precludes *deliberation and premeditation.*") (emphasis supplied); *Commonwealth v. Swartz,* 335 Pa.Super. 457, 484 A.2d 793 (1984) (in light of Supreme Court language suggesting that diminished capacity defense is limited to first degree murder, defense unavailable in robbery prosecution), *allocatur denied* (May 7, 1985). *Cf. Commonwealth v. Garcia,* 505 Pa. 304, 479 A.2d 473 (1984).

It would appear that the only basis to acquit a defendant on a charge other than first degree murder on criminal responsibility grounds would be a finding of legal insanity pursuant to the *M'Naghten* rule and 18 Pa.C.S.A. § 315. However, the court specifically refused to find Scott insane under *M'Naghten* because it determined that Scott's mental disease was traceable to "the habitual long term abuse of drugs." *See* Trial Court Opinion at 20. Moreover, even if the court *had* found Scott to be legally insane, its finding that his "mental disease" resulted in part from voluntary drug intoxication would result, at best, only in a reduction of the first degree murder charge to a lesser degree. *See* 18 Pa.C.S.A. § 308.

order only to the extent that it denied his petition for habeas corpus relief. It is settled, however, that the defendant cannot appeal from the denial of a pre-trial application for habeas corpus relief. *See, e.g., Commonwealth v. Myers*, 457 Pa. 317, 322 A.2d 131 (1974); *Commonwealth ex rel. Gordy v. Lyons*, 434 Pa. 165, 252 A.2d 197 (1969).

We recognize that Scott's argument, both in the court below and on appeal, focuses on the propriety of the court's decision under the Mental Health Procedures Act. However, even if the appeal is construed as from an order entered under the Act, it still is interlocutory. Although the Act is silent on the question of appealability, "[t]he general rule in criminal cases is that a defendant may appeal only from a final judgment of sentence, and an appeal from any prior order or judgment will be quashed." *Commonwealth v. Kurilla*, 391 Pa.Super. 241, 243, 570 A.2d 1073, 1073 (1990); *see also Commonwealth v. Reagan*, 330 Pa.Super. 417, 418, 479 A.2d 621, 622 (1984). The purpose of the rule is to "prevent[ ] undue delay and avoid[ ] the disruption of criminal cases by piecemeal appellate review." *Commonwealth v. Bolden*, 472 Pa. 602, 610, 373 A.2d 90, 93 (1977) (plurality opinion); *see also Commonwealth v. Hunter*, 294 Pa.Super. 52, 55, 439 A.2d 745, 747 (1982), *allocatur denied* (June 11, 1982). The rule, however, "is neither absolute nor inflexible." *Commonwealth v. Bolden, supra; see also Commonwealth v. Kurilla, supra*. Thus, an appeal before final judgment may be permitted in those exceptional circumstances "when the need for immediate review outweighs the purposes of the final judgment rule." *Commonwealth v. Bolden, supra*, 472 Pa. at 610, 373 A.2d at 93–94; *see also Commonwealth v. Hunter, supra*, 294 Pa.Super. at 56, 439 A.2d at 747. Exceptional circumstances exist,

> ... (1) where an appeal is necessary to prevent a great injustice to the defendant, or (2) where an issue of basic human rights is involved, or (3) where an issue of great public importance is involved.

*Commonwealth v. Bolden, supra,* 472 Pa. at 611, 373 A.2d at 94 (citations omitted); *see also Commonwealth v. Reagan, supra,* 330 Pa.Super. at 418–19, 479 A.2d at 622; *Commonwealth v. Hunter, supra.*

Here, we find nothing in the record to suggest that "exceptional circumstances" exist that would allow an interlocutory appeal in this case. The Mental Health Procedures Act specifically provides that even if the court refuses to enter a pre-trial acquittal based on a lack of criminal responsibility, the defendant still "may raise the defense at such time as he may be tried." *See* 50 Pa.Stat.Ann. § 7404(a). Thus, the precise issue that Scott seeks to have reviewed at this time—i.e., whether he was legally insane at the time he committed these offenses and thus should be acquitted on all charges—can be presented to the fact-finder at his upcoming trial. If the jury rejects Scott's insanity defense, he still will be free to challenge that finding on a direct appeal. *Cf. Commonwealth v. Tempest, supra.* On the other hand, if the fact-finder *accepts* Scott's argument and acquits him of all charges, it would obviate the necessity for any appeal relating to criminal responsibility. On this record, we see no exceptional circumstances, such as a potential for a "great injustice," an issue of "basic human rights," or an issue of "great importance" that would warrant our allowing this case to proceed in a piecemeal fashion. *See Commonwealth v. Bolden, supra; Commonwealth v. Reagan, supra; Commonwealth v. Hunter, supra.* Accordingly, we must quash Scott's appeal.

For the foregoing reasons, we quash the appeal of defendant Scott, and we affirm the order below.

Defendant Scott's appeal quashed. Order below affirmed.