J-S24022-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JOHN STEVEN HUDAK | : | No. 57 WDA 2024 |

Appeal from the Order Entered December 13, 2023
In the Court of Common Pleas of Westmoreland County
Criminal Division at No(s):  CP-65-CR-0004055-2022

BEFORE:   BOWES, J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY SULLIVAN, J.:               **FILED: September 16, 2024**

The Commonwealth appeals[1] from the order which granted in part the omnibus pretrial motion ("OPM") of John Steven Hudak ("Hudak") and dismissed fifty-one of the sixty-six charges[2] filed against him.   After careful review, we affirm in part, reverse in part, and remand for further proceedings.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] The Commonwealth may take an appeal of right from an order that does not end the entire case if the Commonwealth certifies in the notice of appeal that the order will terminate or substantially handicap the prosecution.  ***See*** Pa.R.A.P. 311(d); ***Commonwealth v. Torres***, 764 A.2d 532, 536, n. 2 (Pa. 2001).  The Commonwealth has filed such a certification in this case.

[2] The Commonwealth charged Hudak with thirteen counts of persons not to possess firearms (18 Pa.C.S.A. § 6105(a)(1)), thirteen counts of receiving stolen property (18 Pa.C.S.A. § 3925(a)), thirteen counts of theft by unlawful taking (18 Pa.C.S.A. § 3921(a)); twenty-five counts of sale of firearms (18 Pa.C.S.A. § 6111(g)(2) and (c)) and one count of prohibited offensive weapons (18 Pa.C.S.A. § 908(a)).

In early August 2021, George Lokay ("the victim") went on a multi-week, out-of-state trip with his daughter. *See* N.T. Preliminary Hearing, 11/2/22, at 7. Prior to his departure, he went to the basement of his house, opened his gun safe, and removed cash to pay for his uncle to do a basement renovation while the victim was away. *See id*. During the trip, the victim's uncle called and told him that as he moved the safe during the renovation, "two guns fell out onto the floor." *Id*. When the victim returned home, he opened the safe and found "it was wiped out. Everything that was in the safe [was gone]." *Id*. at 8. The victim believed approximately twenty guns were missing but was only able to provide information and a description of thirteen of them. *See id*. at 5-6; *see also* N.T. OPM Hearing, 9/7/23, at 21. The victim reported the missing guns to the police. *See id*. at 8-9. The victim had not given permission for anyone to take the firearms from his residence. *See id*. at 8.

The police had already received a report from the victim's wife ("wife") which led to Detective Mark Hamilton's ("Detective Hamilton") discovery of information Hudak had used gift cards belonging to the victim and his wife.[3] *See* N.T. OPM Hearing, 9/7/23, at 20-27. Detective Hamilton obtained a search warrant for Hudak's cell phone, pursuant to which he found

_____

[3] The police also learned that when Hudak was hospitalized for a drug overdose, he was discovered to have in his possession wife's checkbook and other items she had report stolen. *See id*. at 33.

photographs of the victim's open gun safe and all of the victim's guns, as well as multiple text exchanges between Hudak and individuals who were interested in purchasing them. *See* N.T. Preliminary Hearing, 11/2/22, at 16-21, 27-31, 40; N.T. OPM Hearing, 9/7/23, at 43-46.[4] Detective Hamilton checked Hudak's criminal history and determined he was a person not eligible to possess, sell, or transfer firearms. *See id*. at 19. Detective Hamilton also conducted two interviews with Hudak, one of which was recorded.[5] *See* N.T. Preliminary Hearing, 11/2/22, at 17. During the second, unrecorded interview, Hudak admitted to stealing and trying to sell the guns for either cash or heroin. *See id*. at 20-21; N.T. OPM Hearing, 9/7/23, at 47-49.

The police filed a criminal complaint. A preliminary hearing took place in November 2022, at which the Commonwealth agreed to dismiss three charges against Hudak; the remaining offenses, detailed above, were bound over for trial. In early September 2023, Hudak filed his OPM seeking to suppress the contents seized from his cell phone and to dismiss the charges

---

[4] Police recovered one of the stolen guns in an arrest in an unrelated matter in June 2022. *See* N.T., 11/2/22, at 19-20.

[5] A CD containing the recorded interview is included in the Commonwealth's reproduced record, however, it is not contained in the certified record. We remind the Commonwealth that documents contained in the reproduced record but not in the certified record do not exist for the purposes of appellate review. *See Commonwealth v. O'Black*, 897 A.2d 1234, 1240 (Pa. Super. 2006). Moreover, it is an appellant's responsibility to ensure the certified record is complete. *See Commonwealth v. B.D.G.*, 959 A.2d 362, 372 (Pa. Super. 2008).

against him.  Following a hearing, the trial court denied the motion to suppress but granted Hudak's motion to dismiss most of the charges, except those related to two Glock guns and a Smith & Wesson pistol.  This timely appeal followed.[6]

The Commonwealth raises the following issue for our review:

1. Did the trial court erroneously apply the law and misevaluate the Commonwealth's pretrial evidence when it granted [Hudak's] omnibus pre-trial motion for *habeas corpus* relief and dismissed a majority of the firearm-related charges against [Hudak]?

Commonwealth's Brief at 5 (capitalization regularized, italics added).

Our standard of review for an order granting a petition for *habeas corpus* and dismissing a criminal charge based on the insufficiency of the evidence establishing a *prima facie* case is as follows:

In reviewing a trial court's order granting a defendant's petition for writ of *habeas corpus*, we must generally consider whether the record supports the trial court's findings, and whether the inferences and legal conclusions drawn from those findings are free from error.  Further, the evidentiary sufficiency, or lack thereof, of the Commonwealth's *prima facie* case for a charged crime is a question of law, and the appellate court's review is plenary.

**Commonwealth v. Little**, 305 A.3d 38, 43–44 (Pa. Super. 2023) (internal quotation marks and citations omitted).  "A pre-trial petition for a writ of *habeas corpus* . . . is similar in purpose to a preliminary hearing."

_____

[6] The trial court did not order the Commonwealth to file a concise statement of errors complained of on appeal.  The trial court did issue a Rule 1925(a) opinion.

- 4 -

***Commonwealth v. Scott***, 578 A.2d 933, 937 (Pa. Super. 1990) (citation omitted, italics added). With respect to preliminary hearings, this Court has explained the purpose of the hearing is:

> ... [T]o determine whether the Commonwealth has made out a *prima facie* case for the offenses charged. A *prima facie* case consists of evidence, read in the light most favorable to the Commonwealth, that sufficiently establishes both the commission of a crime and that the accused is probably the perpetrator of that crime. ...
>
> The Commonwealth establishes a *prima facie* case when it produces evidences [sic] that, if accepted as true, would warrant the trial judge to allow the case to go to a jury. The Commonwealth need not prove the elements of the crime beyond a reasonable doubt; rather, the *prima facie* standard requires evidence of the existence of each and every element of the crime charged. Moreover, **the weight and credibility of the evidence are not factors at this stage**, and the Commonwealth need only demonstrate sufficient probable cause to believe the person charged has committed the offense. Inferences reasonably drawn from the evidence of record which would support a verdict of guilty are to be given effect, and the evidence must be read in the light most favorable to the Commonwealth's case.

***Commonwealth v. Ouch***, 199 A.3d 918, 923 (Pa. Super. 2018) (internal citations and quotations omitted; original emphasis).

A person commits the crime of person not to possess a firearm when he has been convicted of an offense enumerated in the statute and possesses a firearm. **See** 18 Pa.C.S.A. § 6105(a)(1). The statute defines "firearm" as including "any weapons which are designed to or may readily be converted to expel any projectile by the action of an explosive or the frame or receiver of any such weapon." 18 Pa.C.S.A. § 6105(i).

A person is guilty of receiving stolen property "if he intentionally receives, retains, or disposes of movable property of another knowing that it has been stolen, or believing that it has probably been stolen, unless the property is received, retained, or disposed with intent to restore it to the owner." 18 Pa.C.S.A. § 3925(a). The statute defines "receiving" as "acquiring possession, control or title, or lending on the security of the property." 18 Pa.C.S.A. § 3925(b).

A person is guilty of theft by unlawful taking "if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof." 18 Pa.C.S.A. § 3921(a).

A defendant commits the crime of unlawfully selling or transferring a firearm when he is not a licensed importer, manufacturer, or dealer, but he desires to sell or transfer a firearm to any other unlicensed person (excepting transactions between certain family members) and does so at other than a licensed facility or a county sheriff's office. *See* 18 Pa.C.S.A. § 6111(c). Further, to commit this crime, he must either "knowingly sell[], deliver[], or transfer a firearm" in violation of Section 6111 of the Crimes Code, 18 Pa.C.S.A. § 6111(g)(1), or "knowingly or intentionally sell, deliver or transfer a firearm under circumstances intended to provide a firearm to any person, purchaser or transferee who is unqualified or ineligible to control, possess or use a firearm" in violation of Section 6111. 18 Pa.C.S.A. § 6111(g)(2).

A person commits the crime of prohibited offensive weapons when he unlawfully "makes repairs, sells, or otherwise deals in, uses, or possesses any offensive weapon." 18 Pa.C.S.A. § 908(a). The statute defines an offensive weapon in part as any "sawed-off shotgun with a barrel less than 18 inches[.]" 18 Pa.C.S.A. § 908(c).

Lastly, where a person is not found in actual possession of guns, the Commonwealth may establish his constructive possession of such weapons. This Court has stated:

> Where a defendant is not in actual possession of the prohibited items, the Commonwealth must establish that the defendant had constructive possession to support the conviction. Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. We have defined constructive possession as conscious dominion, meaning that the defendant has the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.
>
> It is well established that, as with any other element of a crime, constructive possession may be proven by circumstantial evidence. In other words, the Commonwealth must establish facts from which the trier of fact can reasonably infer that the defendant exercised dominion and control over the contraband at issue.

*Commonwealth v. Parrish*, 191 A.3d 31, 36-37 (Pa. Super. 2018) (citations and quotation marks omitted and formatting altered).

The Commonwealth argues that in dismissing all charges except those related to three weapons the trial court "failed to assess [its] *prima facie* [case] in a light most favorable to the Commonwealth and give the

- 7 -

Commonwealth all the reasonable inferences to which it is entitled at [the] pre-trial stage of [the] proceeding and which **could** support a guilty verdict." Commonwealth's Brief at 19 (emphasis in original). The Commonwealth maintains the trial court failed to "consider all the evidence, circumstantial and direct, give the Commonwealth all reasonable inferences from the evidence, and consider all the evidence in a light most favorable to the Commonwealth." **Id**. at 20. Instead, the Commonwealth complains, the trial court required that it present direct evidence as to each and every firearm at issue. **See id**. at 19-20.

The trial court stated:

> The Commonwealth charged [Hudak] with crimes relating to 13 different firearms, yet only provided specific evidence as to three of them . . .. When viewed in the light most favorable to the Commonwealth, the only evidence that [Hudak] possessed, stole, or sold/transferred firearms relates to these three firearms.

> Each firearm associated with the case was mentioned in the testimony. However, it is otherwise impossible to discern from the evidence presented which of the remaining firearms were possessed, stolen, transferred, or sold by [Hudak]. Though Detective Hamilton referenced "other" firearms located on [Hudak's] phone, it remains unclear which firearms they were. No evidence from any source showed that an actual transfer of firearms or sale occurred with the remaining firearms. Finally, there was no evidence provided that the Striker 12-gauge auto shotgun in Count 66 was a prohibited weapon.

> Detective Hamilton reported that [Hudak] confessed to taking "the weapons" and that he and [wife] were selling the guns to drug dealers for either cash or trade for heroin. However, this general statement does not specify which of the guns-the two [G]locks and the Smith & Wesson-or all of the guns in the investigation.

    Although the Commonwealth would like [the trial c]ourt to
    infer that the remaining firearms were possessed, stolen,
    transferred, or sold by [Hudak], as either a principal or an
    accomplice, [the trial c]ourt maintains that there is not enough
    evidence linking [Hudak] to them, even when viewed in light most
    favorable to the Commonwealth and drawing all reasonable
    inferences [therefrom].

Trial Court Opinion, 3/11/24, at 10-12 (record citations omitted).

After a thorough review of the relevant law and the certified record, we reverse the dismissal of all the charges except for the charge of prohibited offensive weapons. In its four-paragraph analysis, the trial court fails to discuss the elements of the individual offenses, fails to explain which elements the Commonwealth did not prove at the *prima facie* level, and includes no citation to supporting authority. *See id*. at 10-11. Instead, as the Commonwealth argues, the trial court determined the Commonwealth was required to present direct evidence as to each of the thirteen guns to make out a *prima facie* case. *See id*.; *see also* Commonwealth's Brief, at 19-20. This proposition contravenes the applicable law. We agree with the Commonwealth that the trial court committed reversible error "in failing to view the evidence in a light most favorable to the Commonwealth or making all reasonable inferences in its favor." *Commonwealth v. Munson*, 261 A.3d 530, 541 (Pa. Super. 2021) (reversing denial of motion to refile charges).

Here the evidence demonstrated that prior to the victim's vacation, his guns were in his locked gun safe. When he returned from vacation, his gun safe was empty. *See* N.T. Preliminary Hearing, 11/2/22, at 8. The victim

believed approximately twenty guns were missing but was only able to describe thirteen of them. Those thirteen guns correspond to the guns listed in the criminal information. *See* Criminal Information, 1/13/23, at 1-12 (unnumbered). The victim did not give permission to anyone to take or sell his guns.

At the preliminary hearing, Detective Hamilton testified Hudak was not permitted to possess, sell or transfer a firearm. Detective Hamilton testified he searched Hudak's cell phone and found what he described as a "good amount" of photographs taken with Hudak's cell phone depicting firearms, as well as text messages on multiple apps discussing the sale of the guns and/or trading them for narcotics. N.T. Preliminary Hearing, 11/2/22, at 16-17, 23-24, 26. Some of the photographs showed legible serial numbers which matched guns the victim owned. *See id*. Detective Hamilton also saw photos of what he recognized as the interior of the victim's gun safe. *See id*. Detective Hamilton's testimony established there were photographs on Hudak's cell phone of the thirteen firearms the victim reported missing, and references to the guns in Hudak's text messages. *See id*. at 26. Detective Hamilton clarified Hudak confessed to taking and trying to sell "the weapons." *Id*. at 17-18, 20.

Detective Hamilton amplified his preliminary hearing testimony at the OPM hearing about evidence establishing Hudak's theft of items from the victim's home. He noted the victim's wife confirmed Hudak's presence in the

victim's home during the relevant time, video obtained from a retail store showed Hudak using gift cards wife reported as taken from the home, and several missing items, including a checkbook, were recovered from Hudak when he was hospitalized. Detective Hamilton recounted text exchanges between Hudak and a person named Sierra Fenyus ("Fenyus") which referenced "several of the involved firearms" including a Glock pistol and a Smith & Wesson. N.T. Hearing, 9/7/23, at 41. **_Detective Hamilton testified Hudak was offering to either sell the guns for cash or trade them for narcotics_**. **_See id_**. at 41-42. During the exchange with Fenyus, Hudak stated the guns are "going [to sell] like hot cakes." **_Id_**. at 43. Detective Hamilton stated the text exchange between Fenyus and Hudak referenced "a good bit" of the guns which had been stolen from the victim, as well as additional item taken from the victim's home. **_Id_**. at 44, 48. Additionally, Detective Hamilton pointed out Hudak was in contact with other people about selling the guns, and later admitted one person, Byron Coles, purchased a "large [number]" of the guns, although Hudak could not recall which ones. **_Id_**. at 48.

Although the Commonwealth only showed photographs of three of the guns, it presented evidence Hudak was a person not permitted to possess a firearm, confessed to stealing firearms from the victim's home, was found in possession of other items from the victim's home, had photographs of the victim's open gun safe and of Hudak's guns on his cell phone, and exchanged text messages with various individuals with respect to selling the victim's

guns. When we view the evidence, as we must, in the light most favorable to the Commonwealth and giving the Commonwealth all reasonable inferences, the evidence was sufficient to demonstrate a *prima facie* case with respect to all the charges except for the charge of prohibited offensive weapon.[7] **See Commonwealth v. Williams**, 911 A.2d 548, 552 (Pa. Super. 2006) (reversing the trial court's dismissal of charges of persons not to possess even though the Commonwealth did not present direct evidence the defendant possessed the charged firearm but instead offered "compelling circumstantial evidence to establish this fact through reasonable evidentiary inference"); **Commonwealth v. Prak**, 283 A.3d 347 (Pa. Super. 2022) (unpublished memorandum at *5)[8] (reversing the trial court's dismissal of charges of theft by unlawful taking and receiving stolen property where the defendant was seen within one hundred yards of a store being looted and unspecified property from the store was found in a car in which the defendant was a passenger); **Commonwealth v. Howard**, 281 A.3d 1081 (Pa. Super. 2022) (unpublished memorandum at *9) (reversing the trial court's dismissal of a charge of persons not to possess firearms where the victim stated the

---

[7] As note above the Commonwealth was required to demonstrate the barrel of the Striker shotgun at issue was less than 18 inches. **See** 18 Pa.C.S.A. § 908(c); **see also** Criminal Information, 1/13/23, at 12 (unnumbered). The Commonwealth did not do so.

[8] **See** Pa.R.A.P. 126(b) (unpublished non-precedential memoranda decision of Superior Court filed after May 1, 2019, may be cited for persuasive value).

defendant had a gun "upstairs" and the police recovered a firearm from a bedroom).

Accordingly, we reverse the trial court's order dismissing the charges of persons not to possess, theft by unlawful taking, and receiving stolen property; we affirm the order as to prohibited offensive weapons.

Order affirmed in part and reversed in part. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 09/16/2024